1998-NMCA-121

964 P.2d 153

Michael W. LACKEY, Worker–Appellee,

v.

DARRELL JULIAN CONSTRUCTION and Cigna Property and Casualty Companies, Respondents–Appellants.

No. 19005.

Court of Appeals of New Mexico.

June 19, 1998.

Karen R. Mazzocco, Riley, Shane & Hale, P.A., Albuquerque, for Respondents–Appellants.

Rod Dunn, Dunn Law Offices, Albuquerque, for Worker–Appellee.

*OPINION*

PICKARD, Judge.

{1}   The main issue raised by this case is under what circumstances a worker is entitled to temporary total disability benefits

after he is fired from a light duty job for adequate cause not connected with the disability. A subsidiary issue is whether Worker became temporarily totally disabled as a result of his original accident or as a result of aggravation caused by a subsequent employment. We hold that: (1) as a matter of law, Worker is entitled to temporary total disability benefits despite his firing as long as he is not released to work by his physician and (2) as a matter of fact, the workers' compensation judge could find no aggravation by the subsequent employment. Accordingly, we affirm in part and reverse in part the judge's compensation order.

**FACTS**

{2} It is undisputed that Worker suffered two work-related accidents during his employment with Employer, a construction company, on December 6 and December 8, 1995. Worker returned to work with Employer, sometimes under light duty restrictions, specifically that he not engage in repetitive neck motions. Worker continued working for Employer during the winter, spring, and summer of 1996. He was fired from his job on August 12 or 13, 1996, for drinking beer during lunch on July 31, which was a violation of the Employer's rules. The judge specifically found that Worker's firing was appropriate.

{3} Worker got a job with another construction company in November of 1996. There was a dispute in the testimony regarding the type of work Worker was performing for this construction company. Employer, based on the testimony of the owner of the construction company, portrays the work as overhead carpentry work, requiring repetitive neck motions. Worker, on the other hand, testified that he was a crew leader and could accommodate any restrictions that were put on him, including avoiding repetitive neck movements. The judge made a specific finding that Worker's testimony concerning his employment with this company was credible.

{4} During Worker's entire time of working mainly with restrictions, he was seeing doctors and getting conservative treatment for his diagnosed disk herniation. Worker stopped working for the latter construction company in February 1997, and his doctor took him completely off work in March 1997, so that Worker could begin aggressive therapy. Worker has not worked in any capacity since then.

{5} There was also a dispute in the testimony regarding what caused Worker's worsening condition during the early part of 1997. Worker's treating physician testified that work "could" be worsening Worker's condition, but that the worsening could also be from the natural progression of the disease. Another doctor testified that it was his opinion that the worsening of Worker's condition was caused by the natural progression of the disease because Worker had not reported any aggravating events occurring at work and also because repetitive neck motion itself was not sufficient to cause the degree of deterioration in Worker's condition. The judge made a specific finding that Worker did not suffer any work-related accidents while working for the latter construction company.

{6} The judge conducted an extensive benefit analysis, with separate conclusions as to various time periods. First, there was a 38–week period during which the judge awarded $25.30 per week. This appears to be the period of time during which Worker was still employed with Employer before his firing, but was earning less money than previously, although the number of weeks appears erroneous. Some of the additional weeks may be explained by including in this period the weeks between Worker's firing and the beginning of his new employment; the judge found that Worker was entitled to the same amount of benefits as he was getting while he was employed with Employer after his termination and until he became re-employed. However, Employer does not challenge this portion of the award to the extent it was based on the weeks before Worker's firing in August.

{7} Second, there was a 14–week period during which the judge awarded $177.00 per week. This appears to be the period during which Employee worked for the second employer and was earning much less than he was earning when working for Employer. Worker sought his full compensation rate

during this time, arguing that his firing constituted a refusal to provide light duty work and thereby "triggered Employer's responsibility to pay temporary total disability benefits." The judge did not accept Worker's argument and instead concluded that "the termination did not constitute a refusal to provide light duty work" and therefore "the termination did not trigger Employer's responsibility to pay temporary total disability benefits." However, the judge awarded disability benefits during this time, terming them "temporary partial" and figuring them pursuant to the formula in NMSA 1978, § 52–1–25.1(C) (1990).

{8} There was also a third period of time during which the judge awarded benefits at Worker's full compensation rate of $269.79. This was the time after February 1997 after which Worker could no longer work and his doctor took him off work. As to this period, the judge awarded the full compensation rate, concluding that:

> As a matter of law, once Worker has been taken off work by his authorized health care provider, Worker is entitled to reinstatement of temporary total disability benefits until he reaches maximum medical improvement for as long as he remains totally disabled, regardless of whether he was terminated for cause or not.

{9} Thus, there are two time periods challenged by the Employer—the period after which Worker was fired but before he was taken off work and the period after which Worker was taken off work by his physician. It is the award of benefits during this latter time period that we affirm, while we reverse in part the former.

## DISCUSSION

### Temporary Total Disability

{10} Section 52–1–25.1 provides in pertinent part:

> A. As used in the Workers' Compensation Act [this article], "temporary total disability" means the inability of the worker, by reason of accidental injury arising out of and in the course of his employment, to perform his duties prior to the date of ... maximum medical improvement.

> B. If, prior to the date of maximum medical improvement, an injured worker's health care provider releases the worker to return to work and the employer offers work at the worker's pre-injury wage, the worker is not entitled to temporary total disability benefits.

> C. If, prior to the date of maximum medical improvement, an injured worker's health care provider releases the worker to return to work and the employer offers work at less than the worker's pre-injury wage, the worker is disabled and shall receive temporary total disability compensation benefits equal to sixty-six and two-thirds percent of the difference between the worker's pre-injury wage and his post-injury wage.

It should be noted that, under Subsection 52–1–25.1(C), even if the worker is not being paid full compensation benefits, the benefits awarded are termed "temporary total disability." There is no such term as "temporary partial disability benefits" under the Act, although, as a practical matter, the award of benefits under this subsection is a fraction of the full compensation benefit. It is therefore a partial benefit.

{11} Employer relies on *Aranda v. Mississippi Chem. Corp.*, 93 N.M. 412, 414, 600 P.2d 1202, 1204 (Ct.App.1979), and *Ortiz v. BTU Block & Concrete Co.*, 1996–NMCA–097, ¶ 14, 122 N.M. 381, 925 P.2d 1, for the proposition that " '[i]f an employee, after injury, resumes employment and is fired for misconduct, his impairment playing no part in the discharge, there is no compensable disability .' " *Aranda*, 93 N.M. at 414, 600 P.2d at 1204 (quoting *Vetter v. Alaska Workmen's Compensation Bd.*, 524 P.2d 264, 266 (Alaska 1974). Employer also contends that we indicated in *Ortiz* that the situation in this case is "precisely the case ... [in which we] would not award disability benefits."

{12} We disagree that we so indicated in *Ortiz*. In fact, we said the exact opposite: "we need not address whether benefits would be due if an employer offered employment to the injured worker, the worker accepted, and the worker was then fired." *Ortiz*, 1996–NMCA–097, ¶ 14, 122 N.M. 381, 925 P.2d 1. Thus, since this case involves the situation

where the employer offered employment, the worker accepted, and the worker was then fired, we must address the question left open in *Ortiz*. Indeed, *Ortiz* goes a long way toward answering the question.

{13} In *Ortiz*, we specifically disagreed with an employer's "reading of *Aranda* as stating that every worker fired for cause is deemed to have left the work force voluntarily and therefore is not entitled to benefits." *Id.* We said that a "worker's being fired for misconduct may be relevant to whether the worker's injury is the reason the worker has no job, or it may be relevant to whether the worker has, in effect, rejected a job offer." *Id.* Importantly, we said that "[o]ne firing . . . is not dispositive of the issue of whether the worker is willing to be employed." *Id.*

{14} We also said that we were not convinced that the Workers' Compensation Act provided benefits only to those willing to work. *Id.* The overall thrust of *Ortiz* is that benefits should be awarded consistent with the intent of the Act in accordance with the Act's terms. This thrust is apparent in our discussion of the employer's contention that fundamental fairness should control situations that are not expressly covered by the Act. We agreed that fundamental fairness should control when the Act provides no guidance, but we disagreed that the facts before us in that case were such that no guidance was given. *Id.* ¶¶ 9–10.

{15} In *Ortiz*, the worker was fired four days after her accident, and the employer did not offer her employment when she was released to work by her doctor. *Id.* ¶¶ 2–3, 8. We held that, because the statutory language in Subsections 52–1–25.1(B) and (C) expressly required an offer of employment before temporary total disability benefits could be eliminated or reduced, the employer there could not take advantage of these subsections even though the worker was properly fired for cause. *Ortiz*, 1996–NMCA–097, ¶¶ 8, 10, 122 N.M. 381, 925 P.2d 1.

■ {16} The same reasoning controls here with regard to the time period after Worker's doctor took him off work. One of the statutory prerequisites under either Subsection 52–1–25.1(B) or (C) is that the health care provider has released the worker to return to work. In this case, Worker's physician essentially revoked his earlier release when he took Worker off work. Under *Ortiz* then, the express terms of the statute are not satisfied at this time, and therefore the judge was correct in ruling that full temporary total disability benefits are owed to Worker for this time.

{17} Nor are we persuaded that Worker's earlier firing constitutes a forfeiture forever of his right to later seek what would be otherwise proper compensation benefits. As we said in *Ortiz*, one firing is not dispositive. Employer contends, however, that its justified termination of Worker should result in a forfeiture of benefits because Employer could no longer control the details of Worker's work to insure that Worker would not be reinjured. Whatever the merits of this argument in a case with different facts, it does not apply in this case. Our disposition of the second issue in this case establishes that Employer is responsible for all of the compensation benefits to which Worker is entitled for his accidental injury caused by his employment with Employer. Because Worker's firing had nothing to do with his inability to go back to work after his doctor took him off work, the statutory scheme supports the judge's conclusion of law quoted above, as well as his award of full temporary total disability benefits after February 1997.

■ {18} A different result, however, is required with regard to the benefits awarded after Worker's firing and before he was taken off work by his doctor. For this period of time, we agree in part with Employer. For this period of time, Employer satisfied the express provisions of Section 52–1–25.2(C)— Worker was released to work, Employer offered Worker a job at less than Worker's earlier wage, Worker accepted and began work, but Worker was fired for reasons unrelated to his disability. During this time, because the elements of the statute were satisfied, Worker would not be entitled the full benefits for temporary total disability to which he claims entitlement.

{19} Although we generally agree with Employer's position as to this period of time, we must keep in mind that we are dealing

with a situation in which the Workers' Compensation Act does not provide all of the answers. It will be recalled that the judge awarded Worker $25.30 per week even when Worker was working for Employer because Employer was not paying Worker what Worker had earned before his accident. Should Employer still be liable for that $25.30 per week even after Worker was fired? We believe it should.

■ {20} When the Act does not provide the explicit answer to the question at issue, fundamental fairness is to be the guide. *See Ortiz*, 1996–NMCA–097, ¶ 9, 122 N.M. 381, 925 P.2d 1. Since Employer did not in fact employ Worker at his pre-injury wage under Section 52–1–25.1(B), the judge calculated benefits under Section 52–1–25.1(C). The judge did not reduce those benefits after Worker was fired because Employer did not satisfy the statutory criteria pursuant to which it did not need to pay Worker any benefits. The Workers' Compensation Act provides statutory incentives to both employers and employees to encourage return to work with minimal dependence on compensation rewards. *See Connick v. County of Bernalillo*, 1998–NMCA–060, ¶ 6, 125 N.M. 119, 957 P.2d 1153. If Employer wanted to totally avoid liability for disability benefits in the event Worker was fired, it should have rehired him at his pre-injury wage. Having not done so, we agree with the judge that the appropriate benefits to be paid in this case after Worker was fired, but before he was taken off work, were the same benefits for which Employer was liable under Section 52–1–25.1(C) while Worker was working.

### Apportionment

■ {21} Employer contends that it is entitled to an apportionment of any benefits for which it is liable because Worker's condition was aggravated by his employment with the subsequent employer. This is a simple sufficiency-of-the-evidence contention, which is governed by the standard of review in workers' compensation cases. We employ whole-record review, but that does not allow us to make our own credibility determinations or reweigh the evidence. *See Herman v. Miners' Hosp.*, 111 N.M. 550, 552–53, 807 P.2d 734, 736–37 (1991).

{22} As we noted in the facts section of this opinion, the judge specifically found Worker to be credible when he testified that he was able to and did avoid repetitive neck movements at his subsequent employment. Employer's issue is based on its contention that this testimony was not true, as shown by the new employer's contrary testimony. Employer's issue is also based on its contention that the fact that Worker's condition worsened at the subsequent employment, but not during the employment with Employer, additionally shows that Worker's testimony cannot be true. Finally, its contention is based on what appears to be a misrepresentation about what the testimony of the doctors was. Employer represents that the doctors both testified that they could not tell if Worker's worsened condition was caused by work or the natural progression of the disease. In fact, one doctor stated that it was his opinion that work, even as presented by Employer, did not aggravate the condition.

{23} Employer's contentions are, at best, an invitation to us to refind the facts. This, we will not do. Indeed, Employer must recognize that its issue is not an appropriate one for appellate review inasmuch as the reply brief makes such arguments as: "[t]he WCJ's finding ... is contrary to the weight of the evidence" and "the weight of the evidence establishes that the job demands were greater" at the subsequent employment. As we do not reweigh the evidence, we affirm the judge on this issue. While we deny Worker's request for sanctions, we caution Employer's counsel to be more mindful of the standard of review in future appellate briefs.

### CONCLUSION

{24} The compensation order is affirmed for the period of time after the doctor took Worker off work. For the period of time after Worker was fired, but before his doctor took him off work, the matter is remanded so that the judge can continue the award of $25.30. On remand, the judge shall also award an appropriate attorney fee for the services of Worker's attorney for his substantial success on appeal. The judge may appropriately consider the extra work that

Worker's counsel had to perform on appeal in responding to misleading portions of Employer's brief and consider whether that warrants an increase in the fee under the bad-faith provisions NMSA 1978, § 52–1–54(I) (1993).

{25}  **IT IS SO ORDERED.**

ALARID and APODACA, JJ., concur.