2001-NMCA-056

29 P.3d 533

**Robert C. GRUBELNIK, Worker–Appellant,**

v.

**FOUR–FOUR, INC., and Mountain States Mutual Casualty Company, Employer/Insurer–Appellees.**

**No. 21,762.**

Court of Appeals of New Mexico.

June 22, 2001.

Certiorari denied, No. 21,762, Aug. 6, 2001.

Victor A. Titus, Titus & Murphy Law Firm, Farmington, NM, for Appellant.

Lisa T. Mack, French & Associates, P.C., Albuquerque, NM, for Appellees.

## OPINION

SUTIN, Judge.

{1} Worker appeals from an adverse summary judgment awarding him reduced temporary total disability benefits pending maximum medical improvement status. The reduction was based on wages Worker received while working for an employer who was not his employer at the time of the injury. We reverse.

## BACKGROUND

{2} Employer is Four–Four, Inc. Its insurer is Mountain States Mutual Casualty Company (Insurer). Robert C. Grubelnik (Worker) appeals the Workers' Compensation Judge's (WCJ) summary judgment in favor of Employer. Neither party attacks the facts upon which the WCJ entered summary judgment.

{3} Worker was a welder with Employer. He was injured and paid temporary total disability benefits from the date of the injury until about January 30, 1999.

{4} Worker's health care provider released him to return to work on January 27, 1999. This was before Worker reached maximum medical improvement (MMI). On January 29, 1999, Worker informed Employer's safetyman, apparently during a safety meeting, that he was allowed to return to light duty work. According to Worker's affidavit, at the same time he informed the safetyman that he had a job offer at another employer, Williams Field Services (Williams), as an inspector. Also on January 29, 1999, Worker began work at Williams as an inspector. The safetyman did not offer Worker a job of any kind on or after January 29.

{5} Worker never knew anyone at Employer to work light duty capacity during the nine years he was employed there. Employer concedes that it could not put Worker back to work because the work available at Employer did not fall within Worker's work restrictions:

> Obviously, Worker had already accepted the job at Williams before talking to [the safetyman] and had no intention of returning to work at Four–Four because he knew that there was no work available with Four–Four that was within his restrictions. It would be unfair to penalize an employer who could not put a worker back to work because the type of work that the employer performs does not fall within a worker's work restrictions.

Employer never informed Worker about re-employment procedures.

{6} After this pre-MMI release to return to work, Worker neither sought employment with Employer nor asked for his job back. Worker reached MMI on April 13, 2000.

{7} The WCJ found that Worker did not inform Employer that his health care provider had released him to return to work. Yet the WCJ believed that Employer "was aware of Worker's return to the work force," and assumed that Insurer was also aware. Employer does not contest this belief and assumption in its brief on appeal and appears to concede Worker's contact with Employer's safetyman.

{8} Worker's computation of full temporary total disability benefits for the period covering Worker's release to work date until MMI was $23,471.89. Worker states the WCJ credited this amount for "wages due from others" and ordered only $6,827.30 to Worker for the period of January 27, 1999 to MMI. Worker seeks reversal on the ground that Employer failed to comply with the re-

quirement in NMSA 1978, § 52–1–25.1 (1990) that Employer offer Worker employment before his temporary total disability benefits could be reduced. Worker seeks an order that $16,644.59[1] be restored to him. The WCJ ordered Worker was entitled to "$8,085.36 for lost wages during the return to work prior to MMI."

## DISCUSSION

### Standard of Review

{9} The WCJ framed the issue: "Whether an Employer who has not offered re-employment to an injured worker is required to pay TTD benefits at the full compensation rate even though the worker has returned to work with a subsequent employer in a modified capacity pending MMI." After a "struggle[ ] with this issue," the WCJ determined that, under Section 52–1–25.1(C), "[t]he answer is—no." The issue in this case is whether the WCJ erred in her interpretation of Section 52–1–25.1. We review the interpretation of a statute de novo. *Kahrs v. Sanchez*, 1998–NMCA–037, ¶ 11, 125 N.M. 1, 956 P.2d 132.

### The Statute

{10} Section 52–1–25.1 reads:

A. As used in the Workers' Compensation Act [this article], "temporary total disability" means the inability of the worker, by reason of accidental injury arising out of and in the course of his employment, to perform his duties prior to the date of his maximum medical improvement.

B. If, prior to the date of maximum medical improvement, an injured worker's health care provider releases the worker to return to work and the employer offers work at the worker's pre-injury wage, the worker is not entitled to temporary total disability benefits.

C. If, prior to the date of maximum medical improvement, an injured worker's health care provider releases the worker to return to work and the employer offers work at less than the worker's pre-injury wage, the worker is disabled and shall receive temporary total disability compensation benefits equal to sixty-six and two-thirds percent of the difference between the worker's pre-injury wage and his post-injury wage.

D. If the worker returns to work pursuant to the provisions of Subsection B of this section, the employer shall continue to provide reasonable and necessary medical care pursuant to Section 52–1–49 NMSA 1978.

The WCJ opened up the meaning of the word "employer" to include not only the employer where the injury occurred, but also to include a subsequent employer, such as Williams.

### The WCJ Decision

{11} The WCJ acknowledged that Section 52–1–25.1 expresses a legislative intent that the work relationship survive a work-related accident. The WCJ nevertheless concluded that extending the meaning of "employer" to include the subsequent employer, even when the original employer did not offer employment, would not frustrate the intent of the Workers' Compensation Act (the Act) to "strik[e] a balance (quid pro quo) between the interest of the employer (limited liability) and the interest of the injured worker (payment of immediate wage replacement benefits and medical care)." The WCJ determined that, in the present case, the reduction formula in Section 52–1–25.1(C) should apply where the "worker is earning wages regardless of whether the wages are earned at the pre-injury job or from another job." This outcome, the WCJ resolved, was "fair to both sides."

{12} In addition, the WCJ mused that "in the real world" it is not always possible to fulfill the legislative intent to keep employer and employee together. She gave various examples, believing it made "better sense to interpret Section 52–1–25.1 in a manner that accommodates the facts of each particular case." Such facts may include "restrictions imposed by the treating physician, types of

---

**1.** Employer says that $15,386.53 is the difference between full benefits of $23,471.89, and what he received. The WCJ ordered that Employer pay Worker $8,085.36, which would result in Employer's figure of $15,386.53 as the difference. Worker does not, however, ask us to address this apparent conflict.

jobs available that can accommodate the [restrictions] and whether the parties even want to pursue an employer-employee relationship." But the WCJ's bottom line in the present case was that "[i]n a situation where the injured worker accepts and is able to perform full time employment with another employer, such worker has shown he/she is capable of earning wages and does not qualify for TTD benefits."

{13} The WCJ looked to two cases decided by this Court. In the first case, the worker was fired for misconduct. *Ortiz v. BTU Block & Concrete Co.*, 1996–NMCA–097, ¶ 2, 122 N.M. 381, 925 P.2d 1. The "last straw" was an accident, for which the worker sought workers' compensation benefits. *Id.* We held that the worker was entitled to full temporary total disability benefits because her employer never extended an offer of employment. *Id.* ¶¶ 8, 13, 14, 925 P.2d 1. We stated, "[a]n offer of employment is a prerequisite to the applicability of Section[ ] 52–1–25.1(B) and (C)," and "the legislature, for whatever reason, limited the exception to circumstances in which the employer *offers* a job to the worker." *Ortiz*, 1996–NMCA–097, ¶¶ 8, 13, 122 N.M. 381, 925 P.2d 1.

{14} In the second case, the injured worker returned to work under light duty restrictions but was later fired for drinking alcohol on the job. *Lackey v. Darrell Julian Constr.*, 1998–NMCA–121, ¶ 2, 125 N.M. 592, 964 P.2d 153. He found another job within three months. *Id.* ¶ 3, 964 P.2d 153. A year later, the worker's doctor removed him from work completely. *Id.* ¶ 4, 964 P.2d 153. Though the worker sought full compensation benefits while working for the subsequent employer, the workers' compensation judge awarded reduced benefits pursuant to the formula in Section 52–1–25.1(C). *Lackey*, 1998–NMCA–121, ¶ 7, 125 N.M. 592, 964 P.2d 153. We affirmed because the employer satisfied the statute by offering the worker a job when the worker was released to work. *Id.* ¶ 18, 964 P.2d 153. Thus, the worker was not entitled to full benefits. *Id.*

{15} Neither *Ortiz* nor *Lackey* is dispositive of the issue here. Like the present case, the *Ortiz* employer extended no offer, but because *Ortiz* did not involve a worker taking employment with a subsequent employer its holding is inapplicable here. Although *Lackey* did involve work for a subsequent employer, its holding hinged on the fact that the employer extended an offer.

**The Contentions**

{16} Worker contends the WCJ's interpretation of "employer" in Section 52–1–25.1 to include subsequent employers both frustrates legislative intent to encourage an employer to employ the injured worker and disturbs the Act's "delicate balance" between employer's and the injured worker's respective interests. Worker also argues that Employer receives a windfall by ignoring the legislative-rehire intent, while Worker is penalized by seeking employment rather than relying solely on compensation benefits. Worker argues further that Section 52–1–25.1's plain reading is that "employer" means the employer at the time of the employee's injury, and, based on *Ortiz*, an offer of employment by that employer is a prerequisite to the applicability of Section 52–1–25.1(C).

{17} Employer agrees only that "the legislature apparently assumed that a worker, if he returned to work prior to reaching [MMI], would return to work with the employer where he was injured." Employer "maintain[s] that the legislature did not anticipate the circumstances ... [of] a worker who returns to work with a different employer prior to reaching [MMI] and earns almost the same or the same wages that he was earning prior to his injury."

{18} Employer argues the inequity of Worker receiving full benefits and wages totaling more than he was earning before he was injured. Employer contends this result requires a literal interpretation of Section 52–1–25.1 that "lead[s] to a counter productive, inconsistent and absurd result." Employer asserts Worker would receive a windfall, and Employer would be penalized, simply because Employer did not extend an "offer," perhaps because the type of work that Employer performs does not fall within Worker's work restrictions. According to Employer, "[t]he legislature clearly did not intend for a worker to receive workers' compensation benefits **above and beyond**

his pre-injury wage.... Rather, the legislature sought to provide a humanitarian and economical system for compensating injured workmen, while being fair to the employer." Though they have more than superficial appeal, we reject Employer's arguments. *See Coslett v. Third St. Grocery,* 117 N.M. 727, 729, 876 P.2d 656, 658 (Ct.App.1994).

{19} We cannot conclude that the drafters of the Act and the Legislature neglected to contemplate circumstances in which a temporarily totally disabled employee released to restricted work during the temporary period before MMI might seek employment from someone other than the original employer. Yet the Act is silent about the effect on benefits of wages received from another employer during that period. The Act is also silent on whether an employee must seek work from another employer as a condition precedent to continuing to receive maximum compensation benefits for temporary total disability. *See Ortiz,* 1996–NMCA–097, ¶ 14, 122 N.M. 381, 925 P.2d 1 (stating that the Court was not "convinced that the ... Act provides benefits only to those still willing to work").

{20} As discussed by the WCJ, an express purpose of the Act is the rehiring of injured workers. *See* NMSA 1978, § 52–1–50.1 (1990) (invoking a fine if an employer violates its obligation to offer to rehire an injured worker). Section 52–1–25.1 is intended to advance that purpose by giving employers incentive to rehire.

{21} The plain and reasonable reading of Section 52–1–25.1 is that "the employer" means the employer at the time of the injury. We think the Legislature intended Section 52–1–25.1 to hinge a credit against full compensation benefits owed by the employer on *that* employer's offer. *Cf. Lackey,* 1998–NMCA–121, ¶ 17, 125 N.M. 592, 964 P.2d 153 (holding employer "responsible for all of the compensation benefits to which [w]orker is entitled for his accidental injury caused by his employment with [e]mployer").

{22} We agree with Employer that situations exist in which the Act "does not provide all of the answers." *Id.* ¶ 19, 964 P.2d 153. Without an "explicit answer to the question at issue, fundamental fairness is to be the guide." *Id.* ¶ 20, 964 P.2d 153. We understand Employer's request that we not frustrate what it perceives as legislative intent by attributing to the Legislature "an undue precision in drafting." *See Jeffrey v. Hays Plumbing & Heating,* 118 N.M. 60, 63, 878 P.2d 1009, 1012 (Ct.App.1994). Employer has not persuaded us, however, that "the context strongly suggests that an alternative interpretation better advances the purpose of the legislation and there is no apparent reason why the legislature would have preferred the literal interpretation." *Coslett,* 117 N.M. at 730, 876 P.2d at 659. Employer has not shown us any provisions of the Act reflecting the legislative purpose advanced by Employer.

{23} Nor has Employer elaborated on why Worker's interpretation of Section 52–1–25.1 results in a "counterproductive, inconsistent and absurd result" other than Employer's view that a worker would receive an unfair windfall and the employer would be penalized. No ambiguity or need to search for an "answer" moves us to a fundamental fairness analysis. We see no fundamental unfairness or absurdity requiring us to expand the condition precedent in Section 52–1–25.1 to assure that Worker cannot work for full wages at his new position and also receive temporary total disability benefits pending MMI.

{24} We are aware of the concern that an employee might plan to avoid rehire, work for another employer, and receive both wages and full benefits. *Cf. Jeffrey,* 118 N.M. at 64, 878 P.2d at 1013 (stating that to permit a worker to evade the requirements of another statute would be contrary to the Act). The record does not reflect that Worker had a conscious evasion strategy and Employer has not accused Worker of such a scheme. We therefore do not address the concern.

{25} We fully appreciate the WCJ's attempt to consider and balance the interests of both Employer and Worker, and her effort to understand why the Legislature would permit an employee to avoid the Section 52–1–25.1(C) reduction formula under the circumstances of this case. As in *Ortiz,* 1996–NMCA–097, ¶¶ 9–10, 122 N.M. 381, 925 P.2d

1, however, a fundamental fairness analysis is not required here and the particular circumstances of this case do not negate the job offer prerequisite in Section 52–1–25.1(C). If, as the WCJ suggests, other circumstances also suggest the expansion of the meaning of "employer" in Section 52–1–25.1, we suggest this proposed broadening of the statute be undertaken in the Legislature.

## CONCLUSION

{26} We reverse the summary judgment of the WCJ and remand for the WCJ to restore to Worker full, temporary total disability benefits.

{27} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Judge, IRA ROBINSON, Judge.