2006-NMCA-054

134 P.3d 808

**Benjamin GURULE, Worker–Appellant,**

v.

**DICAPERL MINERALS CORPORA-TION, Self-insured, Employ-er/Insurer–Appellee.**

**No. 25,547.**

Court of Appeals of New Mexico.

March 22, 2006.

Joel V. Burstein, Santa Fe, NM, for Appellant.

Paul L. Civerolo, LLC, Paul L. Civerolo, Albuquerque, NM, for Appellee.

## OPINION

CASTILLO, Judge.

{1} The question before us is how to calculate the reduction in the number of weeks of permanent partial disability (PPD) benefits, as set forth in NMSA 1978, § 52-1-42(B) (1990), when a worker has received partial temporary total disability (TTD) benefits, pursuant to NMSA 1978, § 52-1-25.1(C) (1990). We hold that the language of Section 52-1-42(B) authorizes a reduction of one week of PPD benefits for each week of TTD benefits paid, regardless of the percentage of TTD actually paid. Accordingly, we affirm the entry of summary judgment in favor of Employer.

## I. BACKGROUND

{2} The facts of this case are not in dispute. Worker suffered an injury in the scope and course of his employment. The parties agreed to a stipulated compensation order (Stipulated Order), in which they resolved all outstanding issues in the case, except for the amount of credit due Employer for payment of TTD. As to this issue, the parties agreed to the following. From April 9, 2002, to December 8, 2002, a period of 35 weeks, Worker returned to work before he reached maximum medical improvement (MMI) for all of his injuries. During this 35-week period, Worker was paid partial TTD benefits in the aggregate amount of $3,840.86, which was an average payment of $109.73 per week in partial TTD benefits. Worker's compensation rate for TTD benefits is $492.98 per week. Worker's PPD benefit rate is $236.63 per week. As to the credit for the payment of TTD benefits, Employer argued that Employer should receive a week of credit for each week benefits were paid. Worker, on the other hand, contended that credit should be calculated on a dollar-for-dollar basis, which would allow Employer a week of credit when the payments made equal the TTD compensation rate of $492.98. Under Employer's argument, 35 weeks of payments equal 35 weeks of Section 52-1-42(B) credit. Under Worker's theory, Employer would receive only 7.8 weeks of credit under the statute.

{3} After the Stipulated Order was entered, Worker filed a second complaint, seeking resolution of the question regarding the appropriate credit to be given Employer. The parties filed cross-motions for summary judgment on this issue. The Workers' Compensation Judge (WCJ) granted Employer's motion and denied Worker's motion. Observing that partial TTD benefits are paid under a weekly scheme, the WCJ concluded that credit for payment should be applied in a similar fashion—that is, based on the weeks paid. Worker appealed.

## II. DISCUSSION

### A. Standard of Review

{4} Summary judgment is proper where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law. *Garcia v. Smith Pipe & Steel Co.*, 107 N.M. 808, 809, 765 P.2d 1176, 1177 (Ct.App.1988). The only issue before us relates to the interpretation of the statutes. Statutory interpretation is a question of law, which this Court reviews de novo. *Flores v. J.B. Henderson Constr.*, 2003-NMCA-116, ¶ 9, 134 N.M. 364, 76 P.3d 1121.

### B. Statutory Interpretation

{5} Section 52-1-25.1(C) deals with payment of TTD benefits to a worker who has not reached MMI, is released to return to work, and earns less than his pre-injury wage. This section states the following:

> If, prior to the date of maximum medical improvement, an injured worker's health care provider releases the worker to return to work and the employer offers work at less than the worker's pre-injury wage, the worker is disabled and shall receive temporary total disability compensation benefits equal to sixty-six and two-thirds

percent of the difference between the worker's pre-injury wage and his post-injury wage.

*Id.*

{6} In this case, Worker received TTD benefits for a 35–week period, during which he received an average of $109.73 per week. When an employer pays TTD under Section 52–1–25.1(C), that employer receives credit for payment of those TTD benefits, pursuant to Section 52–1–42(B), which states the following:

> If an injured worker receives temporary total disability benefits prior to an award of partial disability benefits, the maximum period for partial disability benefits shall be reduced by the number of weeks the worker actually receives temporary total disability benefits.

*Id.*

■ {7} Worker and Employer urge differing interpretations of Section 52–1–42(B). We begin our analysis by looking to the plain language of the statute and to the intent of the legislature. *See Draper v. Mountain States Mut. Cas. Co.*, 116 N.M. 775, 777, 867 P.2d 1157, 1159 (1994) (stating that courts first look to the plain language of a statute and also examine an act in its entirety in order to construe legislative intent). The language of Section 52–1–42(B) is clear: the maximum period for PPD benefits is reduced by the "number of weeks" the worker actually receives TTD benefits. Section 52–1–42(B). One of the legislative goals of the Workers' Compensation Act (Act), NMSA 1978, §§ 52–1–1 to –70 (1929, as amended through 2005), is to promote the rehiring of injured workers and thereby reduce their reliance on compensation benefits. *See Grubelnik v. Four-Four, Inc.*, 2001–NMCA–056, ¶ 20, 130 N.M. 633, 29 P.3d 533 (stating that Section 52–1–25.1 is intended to advance the purpose of rehiring injured workers); *Lackey v. Darrell Julian Constr.*, 1998–NMCA–121, ¶ 20, 125 N.M. 592, 964 P.2d 153 ("The Workers' Compensation Act provides statutory incentives to both employers and employees to encourage return to work with minimal dependence on compensation rewards.") Allowing an employer full credit for each week of TTD benefits paid under Section 52–1–25.1(C) fos-

ters this goal. The employer is encouraged to rehire an injured worker, and compensation is provided to the worker who returns to work at less than his pre-injury wage.

{8} Worker argues that our case law also recognizes that because the Act is imprecise, the plain meaning rule should be cautiously applied in the workers' compensation context. *Chavez v. Mountain States Constructors*, 1996–NMSC–070, ¶ 25, 122 N.M. 579, 929 P.2d 971. Worker relies on the definitions in Section 52–1–25.1(A) and Section 52–1–50.1 for his argument that TTD is a benefit based on total disability but is awarded for a temporary period of time. Worker cites to several New Mexico cases in which the courts distinguished between partial and full TTD benefits. *See Lackey*, 1998–NMCA–121, ¶ 10, 125 N.M. 592, 964 P.2d 153 (recognizing that the award of benefits under Section 52–1–25.1(C) is a partial benefit); *Ortiz v. BTU Block & Concrete Co.*, 1996–NMCA–097, ¶¶ 8, 10, 122 N.M. 381, 925 P.2d 1 (holding that the worker was entitled to full TTD benefits because the employer never made an offer of employment once the worker was released to work). Worker acknowledges that the distinction between full and partial TTD benefits is only found in New Mexico case law because the legislature did not make such a distinction.

■ {9} Worker then argues that the language of Section 52–1–42(B) recognizes this distinction for purposes of calculating the reduction of future PPD benefits. According to Worker, the phrase "actually receives" in Section 52–1–42(B) creates an ambiguity: is the result of Worker's receipt of one week of partial TTD benefits a reduction of one full week of future PPD benefits or a reduction of future PPD benefits by a partial week? Worker contends that Section 52–1–42(B) must be interpreted so that the reduction to which the statute refers is an equitable and fair reduction. *See Garcia v. Mt. Taylor Millwork, Inc.*, 111 N.M. 17, 19, 801 P.2d 87, 89 (Ct.App.1989) (stating that when the courts interpret the Act, the guideline is fundamental fairness to both the worker and the employer).

{10} Worker's position is that a week-for-week reduction results in a substantial loss to him because his future benefits are calculated based on his PPD rate, which is paid at a higher weekly rate than the partial TTD benefits he received, and that a reduction in weeks of benefits received at the lower TTD benefit rate thus works to reduce the total benefit amount actually received by him during his benefit period. Worker resolves the ambiguity by contending that "to be paid an actual TTD benefit is to be paid a full TTD benefit." Thus, Worker concludes that Section 52–1–42(B) must be interpreted to mean that his future PPD benefits can only be reduced by 7.8 weeks.

{11} Employer argues that the plain language of the statutes supports a week-for-week credit and that there is no need to apply the doctrine of fundamental fairness. We agree that TTD benefits can be paid at a reduced rate or in full, depending on a worker's employment status during the period before the worker reaches MMI. *See* §§ 52–1–25.1; 52–1–50.1(B). We fail to see how this affects the language of Section 52–1–42(B). The term "actually receives" modifies a worker and refers to the benefits received by the worker. *See id.* Absent an ambiguity, there is no need to undertake a fundamental fairness analysis. *Grubelnik,* 2001–NMCA–056, ¶ 23, 130 N.M. 633, 29 P.3d 533 (stating that when there is no ambiguity, there is no need to analyze the statute for fundamental fairness); *Lackey,* 1998–NMCA–121, ¶ 20, 125 N.M. 592, 964 P.2d 153 (stating that when there is no explicit guidance in the Act, fundamental fairness is to be our guide); *Ortiz,* 1996–NMCA–097, ¶¶ 9–10, 122 N.M. 381, 925 P.2d 1 (rejecting application of fundamental fairness analysis because the language of the statute in question covered the issue under consideration).

{12} Even if we were to agree with Worker that we must analyze these statutes by using the fundamental fairness guideline, we are not persuaded by Worker's contention. While we agree that reducing the maximum period for PPD benefits one week for each week Employer pays partial TTD can result in the receipt of less money over the total benefit period, we do not consider this funda-mentally unfair. As we stated before, Section 52–1–25.1, together with Section 52–1–42(B), encourages employers to rehire injured workers and therefore satisfies one of the intents of the Act. The WCJ's analysis of the issue provides additional support. In its order, the WCJ observed that the duration of a worker's benefit entitlement is based on a weekly scheme, rather than an absolute dollar amount, and that the rate of the benefit may vary over the duration of a worker's entitlement. Once we consider the intent of the legislature to give workers the opportunity to return to gainful employment, as well as the Act's general approach of paying benefits on a weekly basis, we are not persuaded that interpreting the statute according to its plain meaning is fundamentally unfair. Thus, we hold that Section 52–1–42(B) allows employers credit for payment of TTD benefits on a week-for-week basis, regardless of whether the benefits paid are full or partial.

## III. CONCLUSION

{13} For the foregoing reasons, we affirm the WCJ's order granting Employer's motion for summary judgment and denying Worker's cross-motion.

{14} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD, and MICHAEL E. VIGIL, Judges.