The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **June 20, 2024**

**No. A-1-CA-41362**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**MARCOS F. HERRERA a/k/a**
**MARCOS FLORENTINO HERRERA,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Court Judge**

Raúl Torrez, Attorney General
Lee Green, Assistant Solicitor General
Santa Fe, NM

for Appellee

Wadsworth Law, LLC
Mathew R. Wadsworth
Rio Rancho, NM

for Appellant

**OPINION**

**BOGARDUS, Judge.**

{1}    Defendant Marcos F. Herrera appeals from the district court's order revoking his probation. On appeal Defendant raises several issues: (1) Defendant argues for the first time that the action to revoke his probation was barred by NMSA 1978, Section 30-31-27.1(B)(3) (2007, amended 2019), providing for limited immunity in cases of alcohol and drug overdoses, "based on evidence obtained due to calling for medical assistance for a drug-related overdose" so he is entitled to limited immunity; (2) Defendant also argues that his previous counsel's failure to move to dismiss, pursuant to Section 30-31-27.1(B), constitutes ineffective assistance of counsel.[1] Because we agree that the limited immunity provided for by Section 30-31-27.1(B)(3) applies to both of Defendant's probation violations, we reverse.

**BACKGROUND**

{2}    This case comes before us in a unique procedural posture.[2] Defendant committed multiple offenses and was sentenced to multiple term-of-years sentences

---

[1]Defendant raises a third argument that the State failed to prove his probation violations to a reasonable degree of certainty. We do not address this argument because we agree with Defendant that the action to revoke his probation was barred by Section 30-31-27.1(B).

[2]This appeal is from the order revoking probation and commitment to the department of corrections filed on March 20, 2023, in D-1116-CR-2018-00533-8, D-1116-CR-2018-00535-8, D-116-CR-2018-00536-8, and D-116-CR-2018-00540-8.

in the district court, to be served consecutively. At the time Defendant was sentenced for these offenses in district court, he was incarcerated in a federal penitentiary in Colorado. In light of the circumstances, the district court decided to run Defendant's sentence concurrently to his "federal sentence in U.S. District Court (District of Colorado)." The district court then suspended his sentence and placed him on unsupervised probation for a period of five years "on the condition that [he] shall observe all federal, state, county and city laws and ordinances, so long as . . . [D]efendant resides out of State." The district court further ordered that

> [i]f at any time . . . [D]efendant is present in the State of New Mexico, [he] is ordered to be placed on supervised probation for a period of five (5) years, under the terms and conditions of the standard order of supervised probation in effect in this district and on the further condition that [he] obey all rules, regulations and orders of the Department of Corrections and Adult Parole and Probation authorities and observe all federal, state, county and city laws and ordinances.

{3}     Some years after Defendant was placed on unsupervised probation, police officers were dispatched to a hotel room to respond to a possible overdose. The responding police officers found Defendant lying on his back in the corner of the hotel room, near a chair. According to the responding officers, it looked like Defendant had fallen out of that chair and onto the floor. One of the responding officers testified at the probation revocation hearing that, at this point, the officers entered the room to assess the situation. The officer further testified that they tried to ask Defendant what he had taken but Defendant was unresponsive. A woman in

Defendant's hotel room told the officers that Defendant had taken a substance called "White China," which the officer testified that he understood to be slang for a narcotics containing Fentanyl. According to the officer, Defendant looked like he was overdosing based on his experience witnessing overdoses in the past.

{4}     As emergency medical services arrived on scene and began rendering aid to Defendant, the responding officers spoke to the woman in Defendant's hotel room. At some point, the responding officers noticed a firearm along with a debit card under Defendant's name on the table, near where they had initially found Defendant. The officer testified that he observed "a torn grocery bag with a white, powdery, crystalline substance in it" that the officer thought appeared to be some combination of "Methamphetamine and Fentanyl." "Due to the items found in the room . . . the room was sealed and secured for a search warrant." Several items were seized from the room—including a firearm.

{5}     On February 22, 2022, the State filed a motion to revoke Defendant's probation and to commit him to the New Mexico Corrections Department (NMCD) for the remainder of his sentence. The State moved to revoke Defendant's probations on grounds that he violated (1) state or federal law, (2) failed to report to probation, (3) possessed a controlled substance, and (4) failed to report an arrest. An evidentiary hearing was held on the State's motion. Following the hearing, the district court found that Defendant "had violated the terms and conditions of his probation . . . by

3

violating [s]tate [l]aws (picking up new charges) and by failing to report to NMCD Probation and Parole." In its oral ruling, the district court stated, "There has been a willful violation proven, and I'm going to find it on two bases, (1) the violation of state laws for having a firearm; and (2) . . . for failing to report when he arrive[d] back in the State."

{6} After allowing for presentence confinement and other applicable credit, the district court sentenced Defendant to the custody of the NMCD for a period of nineteen years, four months, and twenty-one days. Defendant now appeals.

**DISCUSSION**

{7} Defendant argues that the action to revoke his probation was statutorily barred by Section 30-31-27.1(B)(3). As such, we begin by interpreting Section 30-31-27.1(B)(3). As Defendant acknowledges, he failed to preserve this argument below, so we review for fundamental error. We then address the State's contention that we ought to go beyond the plain language of the statute to discern legislative intent. Because we conclude that the district court's revocation of Defendant's probation constitutes fundamental error, we reverse.

**I.    The Revocation of Defendant's Probation Constitutes Fundamental Error**

{8} Defendant argues that the district court's revocation of his probation constitutes fundamental error because the action to revoke his probation in the first place was barred by Section 30-31-27.1(B)(3). According to Defendant, the plain

4

language of Section 30-31-27.1(B)(3) is "explicit and unambiguous regarding probation violations" because it states that evidence obtained as a result of an overdose cannot be used to revoke probation. Therefore, according to Defendant, the district court erred in finding that he violated the conditions of his probation based on the evidence arising from his overdose. Moreover, Defendant asserts that this error is fundamental because he was denied substantial justice as "the entire prosecution of [his] probation violation was explicitly and unambiguously statutorily barred." The State responds that despite its plain language, Section 30-31-27.1(B)(3) should not be interpreted so broadly as to reach nondrug related probation violations. We agree with Defendant.

{9} Ordinarily we review the district court's decision to revoke probation under an abuse of discretion standard. *State v. Leon*, 2013-NMCA-011, ¶ 36, 292 P.3d 493. However, as Defendant concedes, he failed to raise this issue to the district court so he requests that we review for fundamental error. The State agrees that this issue is, in fact, unpreserved and that fundamental error review is normally appropriate under these circumstances. Accordingly, we review for fundamental error. *See State v. Salas*, 2017-NMCA-057, ¶ 42, 400 P.3d 251 (stating appellate courts review unpreserved questions for fundamental error); *see also* Rule 12-321(B)(2)(c), (d) NMRA (providing that appellate courts have discretion to review unpreserved questions involving fundamental error or fundamental rights).

5

{10}     When engaging in fundamental error analysis we begin by asking whether an error occurred—if we determine that it has, we then ask whether the error was fundamental. *See State v. Ocon*, 2021-NMCA-032, ¶¶ 7-8, 493 P.3d 448. We apply the fundamental error doctrine "only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. "The error must shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Castillo*, 2011-NMCA-046, ¶ 29, 149 N.M. 536, 252 P.3d 760 (internal quotation marks and citation omitted). To the extent that our review involves statutory interpretation, we review de novo. *See State v. Rivera*, 2004-NMSC-001, ¶ 9, 134 N.M. 768, 82 P.3d 939.

{11}     In order to determine whether the district court erred in revoking Defendant's probation we must determine whether, as Defendant argues, Section 30-31-27.1(B)(3) barred the probation revocation action in the first place. Both parties acknowledge that there is an absence of case law interpreting Section 30-31-27.1(B)(3). Thus, we must engage in statutory interpretation. "Interpretation of a statute is a matter of law, as is the determination of whether the language of a statute is ambiguous." *State v. Rael*, 2024-NMSC-010, ¶ 38, 548 P.3d 66 (internal quotation marks and citation omitted). "Our primary goal when interpreting statutory language is to give effect to the intent of the Legislature." *State v. Warford*, 2022-NMCA-034,

¶ 22, 514 P.3d 31 (alteration, internal quotation marks, and citation omitted). "The plain language of the statute is the primary indicator of legislative intent, so we look first to the words the Legislature used and their ordinary meaning." *State v. Gutierrez*, 2007-NMSC-033, ¶ 30, 142 N.M. 1, 162 P.3d 156. "Under the plain meaning rule, when a statute's language is clear and unambiguous, we will give effect to the language and refrain from further interpretation." *State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted). In applying the plain meaning rule, we also consider the "context surrounding a particular statute, such as its history, its apparent object, and other [related] statutes." *See State v. Cleve*, 1999-NMSC-017, ¶ 8, 127 N.M. 240, 980 P.2d 23. As our Supreme Court recently acknowledged, "[W]e presume that a [L]egislature says in a statute what it means and means in a statute what it says." *Rael*, 2024-NMSC-010, ¶ 40 (internal quotation marks and citation omitted).

{12}     We therefore look to the plain language of Section 30-31-27.1(B)(3). *See Rivera*, 2004-NMSC-001, ¶ 10 (stating "[t]he starting point in every case involving the construction of a statute is an examination of the language utilized by the Legislature in drafting the pertinent statutory provisions." (alteration, internal quotation marks, and citation omitted)). According to the statute, "[a] person who experiences an alcohol- or drug-related overdose and is in need of medical assistance shall not be arrested, charged, prosecuted or otherwise penalized . . . for violating

7

. . . the conditions of probation or parole" "if the evidence for the alleged violation was obtained as a result of the overdose and the need for seeking medical assistance." Section 30-31-27.1(B)(3). The State agrees with Defendant that the plain language of Section 30-31-27.1(B)(3) "appears to provide immunity for *any* probation violation—whether drug related or not." We agree. The language of Section 30-31-27.1 clearly and unambiguously states that persons who overdose shall not be penalized for probation or parole violations so long as two conditions are met—the evidence for the alleged probation or parole violation must have arisen from both the overdose *and* the need to seek medical assistance. *See* § 30-31-27.1(B)(3). There is simply no language within Section 30-31-27.1(B)(3) to indicate that the Legislature intended for the immunity provided by the statute to be confined to probation or parole violations involving *only* drugs or alcohol. *See Rivera*, 2004-NMSC-001, ¶ 10 (stating where "a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation" (internal quotation marks and citation omitted)); *see also Rael*, 2024-NMSC-010, ¶ 41 (stating where statutory language is unambiguous the "judicial inquiry is complete" (internal quotation marks and citation omitted)). The State does not argue that the statutory language is either unclear or ambiguous. We see no ambiguity in the plain language of Section 30-31-27.1(B)(3) regarding limited immunity for probation and parole violations in cases of drug and alcohol overdoses.

Thus, our "analysis need go no further." *See State v. Vest*, 2021-NMSC-020, ¶ 20, 488 P.3d 626.

{13}    "However, as a matter of thoroughness, we review the purpose, background, and history of the statute to ensure that our plain language interpretation" neither conflicts with the legislative history of the statute nor leads to absurd results as the State suggests it might. *See id.* Specifically, the State argues that both the legislative history and the possibility of absurd results arising from a plain language interpretation of Section 30-31-27.1(B)(3) are grounds for rejecting the interpretation supported by the plain meaning of the statutory language—we disagree.

{14}    First, regarding legislative history—contrary to the State's assertion, the legislative history of Section 30-31-27.1(B)(3) supports Defendant's contention that the Legislature intended to extend limited immunity to *all* probation and parole violations arising from an alcohol or drug overdose. In ascertaining legislative intent we rely not on fiscal impact reports—as the State does in its briefing or even on "the language of bills that died in committee and never became law or bills that were vetoed by the Governor." *Vest*, 2021-NMSC-020, ¶ 34. Rather, "[w]e instead rely on the language of the statute as passed and the history of the statute insofar as any amendments may have been made." *Id.* We therefore "consider the history and background of" Section 30-31-27.1(B)(3). *See Vest*, 2021-NMSC-020, ¶ 51

9

(Thomson, J. dissenting) (internal quotation marks and citation omitted); *see also*

*Unite N.M. v. Oliver*, 2019-NMSC-009, ¶ 26, 438 P.3d 343 (analyzing the history of

a statute by considering the various enacted versions of that statute and similar

statutes through time). In 2019, the Legislature amended Section 30-31-27.1(B)—

the previous version of Section 30-31-27.1(B)(3) (2007)—in part, to expand limited

immunity for persons who seek medical assistance and are experiencing an alcohol

or drug-related overdose. *See* § 30-31-27.1(B)(3). Previously, the statute read,

> [a] person who experiences a drug-related overdose and is in need of
> medical assistance shall not be charged or prosecuted for possession of
> a controlled substance pursuant to the provisions of [NMSA 1978,]
> Section 30-31-23 [(2005)] if the evidence for the charge of possession
> of a controlled substance was gained as a result of the overdose and the
> need for medical assistance.

Section 30-31-27.1(B) (2007). As evident by the plain language, the Legislature

initially limited immunity to apply only to charges and prosecutions for possession

of a controlled substance, pursuant to Section 30-31-23 (2007). However, as the

State acknowledges, the current version adds specific language providing immunity

for all probation and parole violations—so long as such violations meet the two

criteria mentioned above. If the current version of the statute was intended to

continue to restrict limited immunity to only drug and alcohol related violations, the

Legislature would not have broadened the scope of the statute in this way. *See State*

*v. Nick R.*, 2009-NMSC-050, ¶ 28, 147 N.M. 182, 218 P.3d 868 (stating we have

"long held that we must avoid constructions of statutory amendments that would

10

render the change unnecessary and meaningless" (internal quotation marks and citation omitted)). Moreover, the Legislature could have easily clarified, in the amended version of the statute, that limited immunity applied only to drug and alcohol related probation violations—the Legislature did not do so. *See Rael*, 2024-NMSC-010, ¶ 41 (stating "a legislature is presumed to say what it means and mean what it says"). Therefore, we conclude that a plain language interpretation of Section 30-31-27.1(B)(3) is consistent with its legislative history. *See State ex rel. Stratton v. Serna*, 1989-NMSC-062, ¶ 6, 109 N.M. 1, 780 P.2d 1148 (stating that when a statute is amended "[t]he amended language must be read within the context of the previously existing statute").

{15}    Because the relevant statute does not expressly state its purpose, we next consider whether there is reason to depart from the plain meaning of Section 30-31-27.1(B)(3) based on the goals or purpose of the act itself. *See, e.g.*, *Gurule v. Dicaperl Mins. Corp.*, 2006-NMCA-054, ¶ 7, 139 N.M. 521, 134 P.3d 808 (examining the legislative goals and purposes of an act after discerning its clear meaning from the plain language). Here, the statutory section is aimed at those who may be particularly hesitant to seek medical attention for fear of violating conditions of probation or parole. Section 30-31-27.1(B)(3) is not intended to provide blanket immunity for all probation and parole violations—it is specifically circumscribed to apply only where "evidence for the alleged violation was obtained as a result of the

11

overdose and the need for seeking medical assistance." We discern that the purpose of Section 30-31-27.1(B)(3) is clearly to encourage those experiencing an overdose, as well as those witnessing another person overdose, to seek medical attention without fear of a probation or parole revocation action. Therefore, we cannot say that this perceived purpose of the statute is contrary to our plain language interpretation.

{16} Finally, the State has not convinced us that the plain language interpretation of Section 30-31-27.1(B)(3) leads to absurd results. The State argues "the most extreme example of the absurdity of providing blanket immunity from all probation violation prosecution[s] in the manner advanced by Defendant is if a dead body with a gunshot wound were discovered at the scene when EMT personnel showed up to revive an overdosing probationer who had a smoking gun in his hand." According to the State, "[f]ailing to prosecute the appropriate probation violation connected to the dead body would violate judicial policy, leave the public open to additional risk, and fail to deter the probation's future misconduct." We disagree. As the State acknowledges, probation violations are separate and distinct from the prosecution for original offenses. *See State v. Katrina G.*, 2007-NMCA-048, ¶ 11, 141 N.M. 501, 157 P.3d 66 (stating "a probation revocation proceeding does not implicate double jeopardy because it is not a new criminal trial to impose new punishment, but instead is a hearing to determine whether, during the probationary period, the defendant has

12

conformed to or breached the course of conduct outline in the probation order" (omissions, internal quotation marks, and citation omitted)). There is no indication that a plain language interpretation of Section 30-31-27.1(B)(3) would result in either a lack of punishment to those who violate the conditions of their probation while also committing new violations of law nor an increased risk to the public. *See Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)). We decline to depart from our plain language interpretation of Section 30-31-27.1(B)(3). *See State v. Anaya*, 1997-NMSC-010, ¶ 30, 123 N.M. 14, 933 P.3d 223 ("Statutes that define criminal conduct should be strictly construed and doubts regarding their interpretation or construction should be resolved in favor of lenity.").

{17}    Here, it is undisputed that the two probation violations supporting the district court's revocation of Defendant's probation were discovered as a result of Defendant's overdose and the need to seek medical assistance. Specifically, the State does not dispute that Defendant's violation of state law (picking up new charges) nor his failing to report to NMCD Probation and Parole were discovered as a result of the responding officers being called to the hotel room on the day of the overdose. In other words, there is no indication that either of these violations were discovered

due to evidence *not* resulting from Defendant's overdose. Thus, it is clear that both of Defendant's probation violations fall within the umbrella of limited immunity provided by Section 30-31-27.1(B)(3).

{18} In light of our plain language interpretation of Section 30-31-27.1(B)(3) and the undisputed underlying facts, we conclude that the district court erred in revoking Defendant's probation. Moreover, because the action to revoke Defendant's probation was statutorily barred, we conclude that such error is fundamental. *See State v. Cabezuela*, 2011-NMSC-041, ¶ 49, 150 N.M. 654, 265 P.3d 705 (stating "fundamental error occurs where there has been a miscarriage of justice, the conviction shocks the conscience, or substantial justice has been denied" (internal quotation marks and citation omitted)). Thus the action to revoke Defendant's probation was barred in the first place. Because this issue is dispositive, we need not reach Defendant's claim of ineffective assistance of counsel. *State v. Mascareñas*, 2000-NMSC-017, ¶ 1, 129 N.M. 230, 4 P.3d 1221 (declining to reach other issues brought before the Court when the first issue supports reversal and remand).

**CONCLUSION**

{19} For the foregoing reasons, we reverse the revocation of Defendant's probation.

{20} **IT IS SO ORDERED.**

_____

14

KRISTINA BOGARDUS, Judge

**WE CONCUR:**

_____

**MEGAN P. DUFFY, Judge**

_____

**ZACHARY A. IVES, Judge**