2005-NMCA-043

110 P.3d 544

**Carolyn WEGNER and Elaine Mosqueda, Workers–Appellants,**

v.

**HAIR PRODUCTS OF TEXAS, and Spring Tyme, Employers,**

and

**New Mexico Uninsured Employers' Fund, Insurer–Appellee.**

**No. 24,627.**

Court of Appeals of New Mexico.

March 2, 2005.

Victor A. Titus, Titus & Murphy Law Firm, Farmington, NM, for Appellants.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Robert M. Aurbach, Special Assistant Attorney General, Albuquerque, NM, for Appellee.

## OPINION

CASTILLO, Judge.

{1} In this case, we must determine if the provisions of the New Mexico statute creating an uninsured employers' fund (statute) apply prospectively or retroactively to the claims of Appellants Wegner and Mosqueda.

We hold that the terms of the statute apply prospectively, and we affirm.

## I. BACKGROUND

{2} Wegner was injured on February 9, 1998. She timely filed her claim against her employer and was awarded compensation by orders entered in 1999 and 2001. Wegner's employer was uninsured at the time of the injury, and no benefits have been paid. On July 18, 2003, Wegner filed a claim for payment from the uninsured employers' fund under the statute.

{3} Mosqueda's case is similar. She was injured on April 6, 2000. A compensation order against the employer was issued in 2002. Mosqueda's employer was uninsured at the time of her injury, and she has been paid no benefits. Mosqueda filed her claim against the uninsured employers' fund on June 26, 2003.

{4} Enacted by the legislature during the 2003 regular session, the statute is found in 2003 New Mexico Laws, Chapter 258, Section 1, and was compiled in NMSA 1978, § 52–1–9.1 (2003) (amended 2004),[1] as part of the Workers' Compensation Act (Act), NMSA 1978, §§ 52–1–1 to –70 (1929, as amended through 2004). The statute provides that the fund be administered by the workers' compensation administration and directs the administration to establish rules to administer the fund. Section 52–1–9.1(A). Payments from the fund may be made for "workers['] compensation benefits to a person entitled to the benefits when that person's employer has failed to maintain workers' compensation coverage because of fraud, misconduct or other failure to insure or otherwise make compensation payments." Section 52–1–9.1(D). Although the initial appropriation to establish the fund was made by the legislature for fiscal year 2004, 2003 N.M. Laws, ch. 258, § 2, the terms of the statute require annual funding from employers in the form of a fee that is to be paid quarterly at a rate established annually by the administration. Section 52–1–9.1(B), (C). The rate has a cap but must be sufficient to generate enough income to meet payments from the fund for the next

---

1. References in this opinion are to the form of the statute passed in 2003 because the 2003 version was in effect when Appellants filed their claims.

fiscal year. *Id.* Funding is also derived from fund income, reimbursements, penalties, or money otherwise allocated to the fund. Section 52–1–9.1(B), (C), (H), (J).

{5} By operation of law, the statute became effective on June 20, 2003. N.M. Const. art. IV, § 23 ("Laws shall go into effect ninety days after the adjournment of the legislature enacting them, except general appropriation laws[.]"). The parties agree that Wegner and Mosqueda were injured before the effective date of the statute and that in both cases, supplemental compensation orders were entered prior to the effective date of the statute. Wegner and Mosqueda filed claims for payment from the fund and named the New Mexico Uninsured Employers' Fund (Fund) as a defendant. Their cases were consolidated. The Workers' Compensation Judge (WCJ) heard arguments on cross-motions for summary judgment and granted summary judgment in favor of the Fund on January 30, 2004. Wegner and Mosqueda appealed.

## II. DISCUSSION

■ {6} We must determine whether the WCJ erred in determining that the statute should be given prospective application only. Appellants make three arguments in support of reversal. First, they argue that public policy enunciated in the statute supports retroactive applicability. In this regard, Appellants also assert that the statute does not impair existing rights or create new obligations. We evaluate this contention, together with Appellants' second argument: that the statute is procedural, not remedial, in nature and can therefore be applied retroactively. Lastly, Appellants argue that their claims against the Fund did not accrue until after passage of the statute in question and therefore should be covered by the statute. While we are sympathetic to Appellants and the fact that they have received no benefit coverage, we do not believe that the legislature intended the statute to apply to claims that accrued before the effective date of the statute.

### A. Public Policy

■ {7} Interpreting a statute is a question of law; therefore, our review is de novo. *Meyers v. W. Auto*, 2002–NMCA–089, ¶ 13, 132 N.M. 675, 54 P.3d 79. Our goal is to give primary effect to the intent of the legislature. *Id.* Generally, a statute is to be applied prospectively, unless the legislature clearly intended otherwise. *City of Albuquerque v. State ex rel. Los Ranchos de Albuquerque*, 111 N.M. 608, 616, 808 P.2d 58, 66 (Ct.App.1991). Legislative silence is not a reliable indicator of intent. *Swink v. Fingado*, 115 N.M. 275, 283, 850 P.2d 978, 986 (1993). The prospective application of a newly enacted statute must be determined by the words of the statute, the legislature's intent in enacting the statute, and the public policy considerations that are evident from the statute. *Id.* at 284, 850 P.2d at 987.

{8} Here we are dealing with an amendment to the Act. In *Jojola v. Aetna Life and Casualty*, 109 N.M. 142, 143, 782 P.2d 395, 396 (Ct.App.1989), we observed the sui generis nature of worker's compensation law and reviewed the various cases that had analyzed the effective date of amendments to the Act. We set forth "a simple rule upon which the legislature and litigants can rely: in the absence of express statutory language or compelling reasons to the contrary, any new provisions of the Workers' Compensation Act shall apply only to causes of action accruing after the effective date of the provision." *Id.* at 144, 782 P.2d at 397. The parties agree that the legislature did not explicitly state that the enactment was to have retroactive application.

{9} The compelling reason to apply the statute retroactively, according to Appellants, is enunciated in the public policy of the statute, specifically in Section 52–1–9.1(H), which begins with the following language: "For the purpose of ensuring the health, safety and welfare of the public[.]" The "public," according to Appellants, refers to the working men and women of New Mexico. Based on this interpretation, Appellants contend that the statute is intended to protect these working men and women by addressing the "former hole in the system," which the legislature corrected by enactment of the statute. Appellants conclude that the public policy of the statute is to insure that all

injured workers be compensated, regardless of the insurance status of their employers, and that this policy provides the compelling reason for allowing retroactive application.

{10} The Fund contends that the legislature had three purposes in mind when it enacted this legislation: (1) to provide injured workers with a new remedy, (2) to impose quasi-criminal sanctions on employers who fail to insure properly their workers, and (3) to spread equitably the economic burden of fund maintenance among all the payers of workers' compensation benefits. We believe that the Fund has the better argument. The statute is extensive in nature. It provides an additional remedy for those injured workers whose employers have not paid benefits as required by law. Section 52–1–9.1(C). In order for injured employees to recover under this new remedy, the statute creates a fund and sets out how it is to be administered. Section 52–1–9.1(A), (B). It establishes a mechanism for ongoing funding, places a cap on expenditures, and creates an incentive system that encourages employers to pay benefits under the Act. Section 52–1–9.1(B), (G), (H). Given the comprehensive nature of the statute and its effect on the entire workers' compensation system, we see no compelling reason to deviate from the general rule and allow a claim for payment under this statute, regardless of accrual date. The statute affects not only workers but the entire workers' compensation system. The statute also affects the public, to the extent that workers receiving benefits will not look to the welfare system for support.

{11} In further reviewing the statute, we observe that the public policy language relied on by Appellants introduces Section 52–1–9.1(H); the actual content of the subsection, however, relates to penalty payments and reimbursement to the fund by uninsured employers. Payments to injured employees are addressed in Section 52–1–9.1(D), (E). Accordingly, it appears to us that this particular public policy announcement by the legislature is directed to employers and that it provides the basis for imposing penalties and reimbursement obligations on employers who do not provide the required benefits to injured employees.

## B. Procedural Versus Remedial Statute

{12} Appellants contend that the statute is procedural in nature because no rights or remedies are impaired or created and because the statute merely establishes a procedure that makes it easier for employees to receive the benefits to which they are entitled. Appellants point out that the rights of injured employees are not changed; these employees remain entitled to the same benefits they would have received had their employers been properly insured. Based on this, Appellants conclude that the statute should be applied retroactively.

{13} We agree with Appellants that employees remain entitled to the same benefits they would have received had their employers been insured. Section 52–1–9.1(D), (E). However, the statute provides an additional remedy, under which employees may petition for these benefits. Section 52–1–9.1. Section 52–1–9.1(B) requires an uninsured employer to pay an uninsured employer's fee on a quarterly basis. Section 52–1–9.1(H) requires an uninsured employer to reimburse the fund and pay penalties. The imposition of fees and the requirement to make reimbursements and pay penalties are new obligations imposed on employers by the statute. In reading the language of Section 52–1–9.1(B), (H), we conclude that these new obligations can only begin after the date of enactment. Any other interpretation would cause an absurd result: there would be no specific date from which to impose these obligations, and an employer would not know when its liability would begin. "We do not adopt an interpretation of a statute that leads to absurd results." *State v. Adam M.*, 1998–NMCA–014, ¶ 24, 124 N.M. 505, 953 P.2d 40.

{14} In response, Appellants urge us to treat these quasi-criminal remedies as separate issues and deal with them another day, "between other participants not parties to this action." This approach would have us evaluate the effective date of the statute in a piecemeal fashion, an approach we will not adopt. *See State v. Rivera*, 2004–NMSC–001, ¶ 13, 134 N.M. 768, 82 P.3d 939 (direct-

ing that in interpreting a statute, an appellate court must look at a particular statute's function within a comprehensive legislative scheme and that a statutory subsection must be considered in reference to the statute as a whole). If retroactive application of a newly enacted law attaches new legal consequences to events completed before its enactment, substantial rights are affected, and prospective application is generally required. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 270, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (stating that presumption against statutory retroactivity is based on the unfairness that results when new burdens are placed on persons after the fact); *Swink*, 115 N.M. at 290, 850 P.2d at 993. Clearly, there is a question about the constitutionality of imposing penalties and requiring reimbursement based on events that predate enactment of the statute imposing the new obligations. *See Gallegos v. Pueblo of Tesuque*, 2002-NMSC–012, ¶ 33, 132 N.M. 207, 46 P.3d 668 (clarifying that if retroactive application of a statute results in attaching legal consequences to events completed before enactment, prospective application may be required by the New Mexico Constitution).

{15} We do not agree with Appellants' characterization of the statute. As we explained in the preceding paragraph, the statute is substantive legislation that creates new duties, rights, and obligations. As such, the statute is to be applied prospectively. *Id.; see Consol. Freightways, Inc. v. Subsequent Injury Fund*, 110 N.M. 201, 204, 793 P.2d 1354, 1357 (Ct.App.1990) (holding that new provisions of the Act "apply only to causes of action accruing after the effective date of the provision"). Further, we presume that the legislature, when it enacted the statute, was aware of our holdings in *Jojola* and *Consolidated Freightways* and how the effective date of an amendment to the Act is interpreted. *Herrera v. Quality Imps.*, 1999–NMCA–140, ¶ 8, 128 N.M. 300, 992 P.2d 313 (stating that the "[l]egislature is presumed to know of existing law when it enacts legislation" (internal quotation marks and citation omitted)).

### C. Claim Accrual

{16} Appellants argue that because no cause of action under the statute could ac-

crue until after creation of the fund, their claims accrued after passage of the statute, and Appellants should be allowed to recover under the statute. We agree that any right to recover from the fund did not arise until after the effective date of the statute. The accrual date, however, depends on the event that triggers the right. Relying on *Jojola* and *Consolidated Freightways*, Appellants argue that the operable event is the passage of the statute. Our reading of these cases is otherwise.

{17} *Jojola* and *Consolidated Freightways* dealt with amendments to the Subsequent Injury Fund (SIF). In *Jojola*, we held that an amendment requiring the pre-injury filing of a certificate of preexisting impairment would only be applicable to causes of action accruing after the effective date of the amendment. 109 N.M. at 143–44, 782 P.2d at 396–97. The operative date in *Jojola* was the date of the subsequent injury, which is the same as the date of injury under the Act. *Id.* at 142–43, 782 P.2d at 395–96. Therefore, our holding essentially stated that the filing requirement would apply only to those cases wherein the injury occurred after the effective date of the amendment. *Id.* at 144, 782 P.2d at 397.

{18} In *Consolidated Freightways*, we reviewed the same amendment, requiring a certificate of preexisting injury, as well as another amendment, requiring the filing of a notice of claim ninety days before the actual filing of a claim against the SIF. 110 N.M. at 203, 793 P.2d at 1356. We saw no reason to apply different effective dates to the two amendments and reiterated our holding in *Jojola*: "[N]ew provisions of the Workers' Compensation Act shall apply only to causes of action accruing after the effective date of the provision." *Consol. Freightways*, 110 N.M. at 204, 793 P.2d at 1357. One of SIF's arguments in that case was very similar to Appellants' contention here: that the employer's action against the SIF was not pending until the date the claim was actually filed—in that case, on May 16, 1988, which was two months after the amendment's effective date. *Id.* In *Consolidated Freightways*, we relied on *Jojola* and rejected SIF's posi-

tion that the date of claim filing is the same as the date of claim accrual and held that the date the claim was filed was "irrelevant to the prospective application of the amended provision." *Consol. Freightways,* 110 N.M. at 204, 793 P.2d at 1357. Accordingly, we continue to rely on *Jojola* and *Consolidated Freightways* for the proposition that amendments to the Act shall apply only to "causes of action accruing after the effective date of the provision." *Jojola,* 109 N.M. at 144, 782 P.2d at 397; *see Consol. Freightways,* 110 N.M. at 204, 793 P.2d at 1357.

{19} In the cases of Appellants, there is no dispute that the events upon which a claim against the fund would be premised occurred well before the effective date of the statute. The date of claim accrual in this case does not mean the date the new remedy was created by the statute. Rather, we look to the date of injury, which triggers the cause of action under the Act. Consequently, we agree with the Fund: a claimant is limited to an employee whose injury occurs after the effective date of the statute.

### D. Agency Interpretation of the Statute

{20} The Fund, in its answer brief, points to the regulations adopted by the workers' compensation administration, arguing that the agency's interpretation of the statute is entitled to deference by the courts. Specifically, 11.4.12.8.B(1) NMAC (2004) limits claims to "injuries or illnesses that arose from accidents or exposures occurring on or after June 22, 2003." The workers' compensation administration is directed to adopt rules to administer the fund pursuant to the provisions of the statute. Section 52–1–9.1(A). The first set of regulations governing the fund was adopted on October 15, 2003. The claims in this case were filed between three and four months before the regulations were promulgated. We have interpreted the statute such that the WCJ is affirmed; thus, there is no need to address this issue.

### III. CONCLUSION

{21} Based on the foregoing, we affirm the order of the WCJ dismissing Appellants' claims against the Fund.

{22} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and JONATHAN B. SUTIN, Judges.