**Certiorari Granted, January 4, 2018, No. S-1-SC-36770**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2018-NMCA-017**

**Filing Date:  October 30, 2017**

**Docket No. A-1-CA-35126**

**CABLE ONE, INC., a Delaware
corporation,**

**Plaintiff-Appellee,**

**v.**

**NEW MEXICO TAXATION
AND REVENUE DEPARTMENT,
a governmental agency of the
State of New Mexico, and
DEMESIA PADILLA, in her official
capacity as the Secretary of the
New Mexico Taxation and
Revenue Department,**

**Defendants-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Francis J. Mathew, District Judge**

Sutin, Thayer & Browne, APC
Justin R. Sawyer
Timothy R. Van Valen
Albuquerque, NM

Cahill Gordon & Reindel, LLP
Cherie R. Kiser
Sean P. Tonolli
Washington, D.C.

for Appellee

Hector H. Balderas, Attorney General

Santa Fe, NM

New Mexico Taxation & Revenue Department
Legal Services Bureau
Diana A. Martwick, Special Assistant Attorney General
Santa Fe, NM

for Appellants

**OPINION**

**HANISEE, Judge.**

**{1}** We have before us a matter of first impression—whether a company whose tangible property located in New Mexico is used to provide cable television programming, internet, and interconnected Voice over Internet Protocol (VoIP) to customers comes within the definition of "communications system," thereby subjecting it to reclassification and valuation by the New Mexico Taxation and Revenue Department (the Department). We hold Cable One's tangible property falls squarely within the Property Tax Code's (the Code), NMSA 1978, §§ 7-35-1 to -38-93 (1973, as amended through 2016), definition of "communications system" pursuant to Section 7-36-30(B)(1) and that the Department properly reclassified it and subjected it to valuation also pursuant to Section 7-36-30. The district court having concluded otherwise, we reverse.

**BACKGROUND**

**{2}** Cable One operates two cable systems in New Mexico: one in Sandoval County (the Rio Rancho system) and one in Chavez County (the Roswell system). Each system is capable of providing Cable One's customers with cable television service (i.e., video programming), internet access, and interconnected VoIP. When Cable One began its operations in New Mexico in the early 1980s, its primary purpose was to provide cable television service. Between 2002 and 2011, Cable One repurposed a number of its channels in both the Rio Rancho and Roswell systems in order to provide high-speed data (internet) and interconnected VoIP services. Cable One's tangible property within New Mexico includes a "headend" for each of the two systems it operates. According to Cable One, a " 'headend' . . . serves as a collection system for signals over the cable television system" and "also houses equipment that enables Cable One to provide internet access service and interconnected VoIP service to customers over the same cable television system." Cable One's system uses optical means to transmit and receive information.

**{3}** In 2008, the Department "became aware that many cable companies were transitioning from one-way to two-way communication services." Historically, cable television companies were considered to provide "one-way" service, meaning that their systems were designed to transmit but not receive information and were thus not considered

2

"communications systems" for purposes of central assessment.[1] Telephone companies, by contrast, provide two-way service because their systems are capable of both transmitting and receiving information. In response to the "ever[-]evolving technological advancements [in] the cable television, broadband internet, VoIP, and traditional telephone industr[ies,]" the Department began centrally assessing "all cable companies operating in the state which provided two-way communications services that [Sections] 7-36-2 and 7-36-30 . . . governed." Specifically, the Department now centrally assesses "all cable television companies which provide broadband internet and VoIP services."

{4}      Upon being notified that the Department reclassified Cable One's property as a "communications system," Cable One began paying its taxes under protest. Cable One filed a complaint in January 2014 seeking a partial refund of its 2013 taxes paid and a declaratory judgment that its property is not part of a communications system. In response to the district court's question at the motion for summary judgment hearing regarding why its internet access and VoIP services did not qualify under Section 7-36-30(B)'s definition of "communications system," Cable One conceded that those services "would fit within [Section 7-36-30(B)(1)'s] definition" but argued that the court could not look at Subsection (B)(1) "in a vacuum." Cable One argued that "canons of statutory construction are clear . . . that [courts are] to look at a statute in its whole and give effect to every provision of it." Cable One contended that the Department's reliance on Subsection (B)(1)'s definition of "communications system" to guide its determination failed to consider the Code's overall scheme of central assessment and whether the Legislature intended for property such as Cable One's to come within that scheme. As evidence that the Legislature did *not* intend for its property to be centrally assessed, Cable One relied on (1) distinctions between it and other centrally-assessed industries, such as whether they are regulated by the Public Regulations Commission and cross county lines; (2) the definition of "plant" property contained in Section 7-36-30(B)(4), of which Cable One contended it had none, meaning it had no relevant property to be centrally assessed; (3) the failure of House Bill 617 (H.B. 617) during the 2008 legislative session, which would have amended the definition of

---

[1]"Central assessment" generally refers to assessment by a state taxation authority rather than local assessors and denotes the use of a special method of valuation intended to address the challenge of uniformly valuing certain types of businesses and property. *See Comcast Corp. v. Dep't of Rev.*, 337 P.3d 768, 772-73 (Or. 2014) (en banc) (explaining that central assessment "had its origins in unit valuation, an assessment method that . . . was devised to address the difficult task of valuing a business . . . when the property of the business is located in more than one taxing district[,]" and "developed to remedy the perceived problems with unit valuations performed by local assessors"); *see also* § 7-36-2(B), (C) (reserving to the Department the authority to assess the property of particular types of business); § 7-36-15(B) (prescribing a standard valuation method for all property "[u]nless a method or methods of valuation are authorized in Sections 7-36-20 through 7-36-33"); §§ 7-36-22 to -25, and -27 to -33 (providing a special and different valuation method for each type of property subject to central assessment under Section 7-36-2(B), (C)).

3

"communications system;" and (4) the Department's own long-standing construction that cable companies are not subject to central assessment, which Cable One argues should be controlling.

{5}     The Department responded that when Cable One repurposed parts of its existing system between 2002 and 2011 in order to be able to both transmit and receive information, it—like such similarly capable telecommunications companies—became subject to central assessment under Sections 7-36-2 and 7-36-30 because its property then plainly qualified under the statutory definition of "communications system." The Department noted that the definition employs and the statute in general refers to the broader term "communications system" rather than the narrower term "*tele*communications system" that Cable One urged the district court to conclude the Legislature intended. The Department also challenged Cable One's interpretation of the definition of "plant" as violative of rules of statutory construction and its reliance on H.B. 617 "to infer legislative intent" as "groundless."

{6}     The district court granted in part Cable One's motion for summary judgment, concluding that Cable One's property "is not part of a 'communication[s] system' under the . . . Code." In its order, the district court never addressed whether Cable One's property met Section 7-36-30(B)(1)'s definition of "communications system." Instead, it primarily relied on the administrative gloss doctrine—i.e., that "[a]n administrative interpretation of even ambiguous language might bind an agency over a period of time to a particular construction" as the district court described it—and its view of the failure of H.B. 617 as "persuasive evidence that [the Legislature] intended to preserve the then current assessment practices concerning cable television property" to conclude that Cable One's property "is not part of a 'communication[s] system' under the . . . Code."

{7}     The district court denied Cable One's summary judgment motion with respect to its claim for a refund of its 2013 taxes based upon its need to conduct an evidentiary hearing to ascertain the refund amount to which Cable One may be entitled. While the January 2014 action was still pending, Cable One filed a second complaint in January 2015 seeking the same relief as to its 2014 taxes. After the cases were consolidated, Cable One moved for summary judgment on its refund claims for tax years 2013 and 2014. The parties stipulated to the refund amounts for those two years and agreed that there was no need for an evidentiary hearing. In its final judgment, the district court ordered the Department to refund Cable One $54,387.40 of its 2013 taxes and $53,986.84 of its 2014 taxes, amounts that represent the "difference between the property taxes Cable One paid under central assessment . . . and what it would have paid under local assessment." The Department timely appealed.

**DISCUSSION**

{8}     The singular question before us is whether the Department properly reclassified Cable One's property as a "communications system?" The Department argues that when Cable One repurposed its equipment to expand its services to include both internet access

4

and VoIP, it "transformed its[] business from a cable company into a communications system" as defined in Section 7-36-30(B)(1), thus bringing Cable One under the Department's authority. Cable One argues that the Legislature intended the term "communications system" to apply only to "traditional, regulated telecommunications companies," which Cable One is not, meaning the Department had no authority to reclassify Cable One's property and value it under Section 7-36-30. We agree with the Department.

**Standard of Review**

**{9}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv.,* Inc., 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. The parties agree that there are no material facts in dispute and that the issue presented on appeal is purely legal. *See Fed. Express Corp. v. Abeyta*, 2004-NMCA-011, ¶ 2, 135 N.M. 37, 84 P.3d 85. We likewise review de novo the district court's conclusion that Cable One's property is not part of a communications system because that conclusion rests upon the district court's interpretation of the Code, which is also a question of law. *See Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61 ("The meaning of language used in a statute is a question of law that we review de novo.").

**I.      The Legislature Intended for Cable One's Property to Be Classified as "Communications System" and Subject to Central Assessment by the Department**

**A.      Applicable Rules of Statutory Construction**

**{10}** In construing a statute, our "primary goal is to ascertain and give effect to the intent of the Legislature." *Starko, Inc. v. N.M. Human Servs. Dep't*, 2014-NMSC-033, ¶ 18, 333 P.3d 947 (internal quotation marks and citation omitted). "In discerning the Legislature's intent, we are aided by classic canons of statutory construction, and we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135 (alteration, internal quotation marks, and citation omitted). We also examine "the context in which [the statute] was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish." *Maes v. Audubon Indem. Ins. Grp.*, 2007-NMSC-046, ¶ 11, 142 N.M. 235, 164 P.3d 934. In instances where the Legislature has specially defined a term in a statute, courts are required to follow and apply the Legislature's definition "unless the definition is arbitrary, creates obvious incongruities in the statute, defeats a major purpose of the legislation[,] or is so discordant to common usage as to generate confusion." *Wilschinsky v. Medina*, 1989-NMSC-047, ¶ 26, 108 N.M. 511, 775 P.2d 713 (internal quotation marks and citation omitted). We accord such weight to statutory definitions because courts "presume [that statutory definitions] accurately reflect legislative intent." 2A Norman J. Singer, *Statutes and Statutory Construction* § 47:7 at 310 (7th ed. 2014). "Unless

it would lead to an unreasonable result, we regard a statute's definition of a term as the Legislature's intended meaning." *Morris v. Brandenburg*, 2016-NMSC-027, ¶ 15, 376 P.3d 836; *Sw. Land Inv., Inc. v. Hubbart*, 1993-NMSC-072, ¶ 6, 116 N.M. 742, 867 P.2d 412 (explaining in a case involving interpretation of the term "owner" as contained in the Code, that courts "must follow the [L]egislature's intent as evidenced by a legislative definition unless that definition results in an unreasonable classification").

**B.      Cable One Comes Within the Statutory Definition of "Communications System"**

**{11}**      As used in the Code, "communications system" means "a system for the transmission and reception of information by the use of electronic, magnetic or optical means or any combination thereof and which system or any portion thereof is available for use by another person for consideration." Section 7-36-30(B)(1). As the Department points out, the Legislature's definition evinces its intent that any property that—(1) is used for the transmission and reception of information; (2) employs electronic, magnetic, or optical means, or any combination thereof, to accomplish the transmittal and reception of information; and (3) that it be available for use by another person for consideration is considered part of a "communications system." *Id.* The undisputed facts in the record establish that Cable One's property qualifies under the plain language of Section 7-36-30(A) and (B)(1) for classification as part of a "communications system." Cable One, in fact, conceded at the motion for summary judgment hearing that its property in New Mexico meets the definition of "communications system."

**{12}**      Cable One argues, however, that the fact that the Department "begin[s] and end[s its] argument with the definition of 'communications system' " in Section 7-36-30(B)(1) constitutes "selective parsing of the statutory scheme." According to Cable One, another statutory provision—specifically Section 7-36-30(B)(4)—"give[s] rise to [an] ambiguity" regarding whether the Legislature intended for Cable One's property to be considered part of a "communications system." Thus, Cable One argues that we must turn to other interpretive aids in order to determine whether the statutory definition of "communications system" applies to Cable One's property. What Cable One disregards, however, is that "techniques in aid of construction of a statute are used to resolve an ambiguity, not to create one." *Tafoya v. N.M. State Police Bd.*, 1970-NMSC-106, ¶ 13, 81 N.M. 710, 472 P.2d 973. Moreover, in instances such as this where the Legislature has specially defined a term, the Department's focus on Section 7-36-30(B)(1)'s definition is appropriate because "our analysis is bound by the statutory language" and we are not at liberty to "go beyond the plain language" of the definition. *Morris*, 2016-NMSC-027, ¶ 16. That is particularly so where, as here, the party challenging the application of the definition has failed to allege—much less establish—that the definition either leads to an unreasonable result, is arbitrary, is incongruous with the rest of the statute, defeats the legislative purpose of the statute, or generates confusion because it is so discordant to common usage. *See id.* ¶ 15; *Wilschinsky*, 1989-NMSC-047, ¶ 26.

**{13}**      Thus, because Cable One has failed to challenge the statutory definition itself under

the applicable standard, no further construction is required. However, to the extent Cable One's asserted ambiguity argument could be construed as contending that the definition of "communications system" is incongruous with the rest of Section 7-36-30 or other provisions of the Code, we explain why that argument also fails.

**C.    Section 7-36-30(B)(1)'s Definition of "Communications System" Is Not "Incongruous" With Section 7-36-30(B)(4)'s Definition of "Plant"**

**{14}**    "Plant" is defined as "all tangible property located in this state and used or useful for the provision of communication service as reflected by the uniform system of accounting in use by the taxpayer, but does not include construction work in progress or materials and supplies[.]" Section 7-36-30(B)(4). According to Cable One, "[n]one of Cable One's property in . . . New Mexico meets [Section 7-36-30(B)(4)'s] definition [of 'plant'], as Cable One has never maintained and is not required to maintain its books and records in accordance with any uniform system of accounting." Cable One contends that the phrase "uniform system of accounting" refers specifically and only to the Federal Communications Commission's Uniform System of Accounts (USOA)—"a historical financial accounting system" that is intended "for use by telephone companies," 47 C.F.R. § 32.1 (2016); 47 U.S.C. § 220(a)(2) (2012)—despite the facial differences between the terms. Thus, reasons Cable One, because it does not and is not required to use the USOA, it does not have property that qualifies as a "plant" as contemplated by Section 7-36-30(B)(4), and because it does not have property that qualifies as a "plant," it cannot be considered to have property that is part of a "communications system" as defined in Section 7-36-30(B)(1). Cable One's strained reading of Section 7-36-30—particularly its decontexualization of the term "plant" and the inordinate weight it places on the term "uniform system of accounting" as used within the definition of "plant"—is an extreme deviation from not only the approach taken throughout the Code with respect to the relationship between property classification and valuation, but also well-established rules of statutory construction.

**{15}**    Our Legislature enacted a property tax code that distinguishes between different classes of property and establishes special methods of valuation tied to a property's classification. *See generally* §§ 7-36-1 to -33. While "classification" and "valuation" are related concepts, they are distinct. *See*, *e.g.*, § 7-36-2(E) (providing that the Department "may delegate authority to the county assessor for the valuation *and* classification of property" (emphasis added)).

**{16}**    The purpose of property classification is "to shift the burden of taxes from property, as such, to productivity, . . . its utility, its general setting in the economic organization of society, so that every[]one will be called upon to contribute according to his ability to bear the burdens[.]" *Hilger v. Moore*, 182 P. 477, 483 (Mont. 1919). Thus, classification of property inherently focuses on categorizing property based on its use. *See*, *e.g.*, N.M. Const. art. VIII, § 3 (exempting from taxation certain classes of property, including "all church property not *used* for commercial purposes, all property *used* for educational or charitable purposes, [and] all cemeteries *not used* or held for private or corporate profit" (emphases

7

added)); § 7-36-2.1(A) (providing that "[p]roperty subject to valuation for property taxation purposes shall be classified as either residential property or nonresidential property"); § 7-36-20 (providing a special method of valuation for "land *used* primarily for agricultural purposes"); § 7-36-23(A) (providing a special method of valuation for "all mineral property and property *used* in connection with mineral property").

**{17}** Valuation, by contrast, focuses on the process by which the government—after taking into consideration the purpose for which particular property is used—ascertains the property's value in order to levy a uniform tax thereon. *See* N.M. Const. art. VIII, § 1(A) (providing that "taxes levied upon tangible property shall be in proportion to the value thereof," and "[d]ifferent methods may be provided by law to determine value of different kinds of property"); *First Nat'l Bank v. Bernalillo Cty. Valuation Protest Bd.*, 1977-NMCA-005, ¶ 29, 90 N.M. 110, 560 P.2d 174 (explaining that those tasked with assessing or valuing property must "exercise an honest judgment" and that an " 'honest judgment' is not one that favors the state or the taxpayer" but "should be a fair, reasonable, just and truthful judgment of valuation of property"); *see also Gerner v. State Tax Comm'n*, 1963-NMSC-022, ¶ 9, 71 N.M. 385, 378 P.2d 619 (explaining that "to have uniformity and equality in a form of tax, the valuations must be established by some standard"); *Black's Law Dictionary* 1784 (10th ed. 2014) (defining "assessed valuation" as "[t]he value that a taxing authority gives to property and to which the tax rate is applied"). In order to determine the proper valuation method to use to assess the value of property, the property must first be classified. *See Jicarilla Apache Nation v. Rodarte*, 2004-NMSC-035, ¶¶ 2, 3, 14, 136 N.M. 630, 103 P.3d 554 (describing the issue presented as whether certain property "should be classified and valued as agricultural land" rather than "recreational" land because "[t]he question whether property is entitled to the special valuation method in Section 7-36-20 [for land used primarily for agricultural purposes] is a question of classification" (internal quotation marks omitted)). It is a property's classification that dictates the applicable valuation method or methods, not whether a particular valuation method can be applied that determines whether property should be classified a certain way. *See Rodarte*, 2004-NMSC-035, ¶¶ 2, 3, 14.

**{18}** Cable One's interpretation turns this analysis on its head, making a property's classification as a "communications system" dependent not on the purpose for which the property is used but instead on whether a particular valuation method may apply depending on whether the property's owner uses a specific accounting method. Critically, Cable One's analysis ignores that the term "plant" appears in neither the definition of "communications system" nor in Section 7-36-30(A), which establishes the applicable scope of Section 7-36-30. *See* § 7-36-30(A) ("All property that is part of a communications system and is subject to valuation for property taxation purposes shall be valued in accordance with the provisions of this section."). That is to say, the Legislature did not make a property's *classification* as a "communications system" contingent on whether a taxpayer's property includes a "plant" and most certainly did not make classification dependent on whether the taxpayer employs the USOA. Rather, "plant" appears only in Section 7-36-30(B)(4), wherein it is defined as set forth previously, and Section 7-36-30(D), which prescribes one of two *valuation* methods that a taxpayer whose property is classified as "communications system" may elect to have

8

the Department apply. *See* § 7-36-30(C) (providing that "[e]ach taxpayer having property subject to valuation under this section shall elect to have that property valued by the [D]epartment in accordance with either Subsection D or Subsection F of this section"); § 7-36-30(D) (providing a valuation method that focuses on the value of the taxpayer's "plant," "construction work in progress," and "materials and supplies"). Importantly, the term "plant" also does not appear in Subsection F, the other of the two possible valuation methods a taxpayer may elect and, notably, the one that Cable One did not choose. *See* § 7-36-30(F) (providing an alternative valuation method that uses "one or more or a combination of the following methods of valuation and applying the unit rule or appraisal to the property: (1) capitalization of earnings[,] (2) market value of stock and debt[,] or (3) cost less depreciation and obsolescence").

**{19}** While we are mindful that "where several sections of a statute are involved, they must be read together so that all parts are given effect[,]" *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599, that rule of statutory construction does not apply here because neither Section 7-36-30(B)(4) nor Section 7-36-30(D)—both relating to valuation—is "involved" in resolving the pertinent issue Cable One raises here: whether the Department properly reclassified its property as "communications system." They relate only to the manner in which the Department ascertains the taxable value of property already classified as a "communications system" based on whether it meets Section 7-36-30(B)(1)'s statutory definition. Additionally, to adopt Cable One's construction of the statute would effectively require that we read into Section 7-36-30(A) and (B)(1) language that is not there. Specifically, we would need to rewrite Subsection A to say "[a]ll property that is part of a communications system [and includes a plant] . . . shall be valued in accordance with the provisions of this section" and Subsection (B)(1) to say " 'communications system' means a system [that includes a plant and is used] for the transmission and reception of information[.]" We are not at liberty to do so. *See Albuquerque Commons P'ship v. City Council of City of Albuquerque*, 2011-NMSC-002, ¶ 7, 149 N.M. 308, 248 P.3d 856 (explaining that courts "may only add words to a statute where it is necessary to make the statute conform to the [L]egislature's clear intent, or to prevent the statute from being absurd" (internal quotation marks and citation omitted)). Thus, following applicable rules of statutory construction and properly placing in context the term "plant," we conclude there exists no "obvious incongruit[y]" between the definitions of "communications system" and "plant." *Wilschinsky*, 1989-NMSC-047, ¶ 26. We briefly examine legislative history to illustrate that there is neither incongruity—obvious or not—within the statute nor ambiguity as to the Legislature's intent regarding whether Cable One's property may be classified as a "communications system."

**D.** **Legislative History Evinces the Legislature's Intent to Expand the Department's Central Assessment Authority Beyond "Traditional, Regulated Telecommunications Companies"**

**{20}** Legislative history—particularly the Legislature's 1985 amendment of Sections 7-36-2 and 7-36-30—further reinforces our conclusion that the Legislature did not intend to

restrict the Department's central assessment authority to only "traditional, regulated telecommunications companies" as Cable One contends. *See N.M. Real Estate Comm'n v. Barger*, 2012-NMCA-081, ¶ 18, 284 P.3d 1112 (explaining that "[t]here is New Mexico precedent for looking to later amendments of statutes [to] aid in interpreting ambiguous or unclear statutory language"); *In re Gabriel M.*, 2002-NMCA-047, ¶ 15, 132 N.M. 124, 45 P.3d 64 (explaining that courts may compare an earlier version of a statute with a current version "to help determine legislative intent"). Prior to 1985, the Department's central assessment authority extended to property "used in the conduct of the following businesses:"

      (1)    railroad;

      (2)    *telegraph, telephone or microwave transmission*;

      (3)    pipeline;

      (4)    public utility; and

      (5)    airline.

NMSA 1953, § 72-29-2 (1975) (emphasis added) (Vol. 10 Repl., Part 2, 1975 Pocket Supp.). Accordingly, a special valuation method existed for "property that is part of a *telephone or telegraph* communications system." NMSA 1953, § 72-29-19 (1975) (emphasis added) (Vol. 10 Repl., Part 2, 1975 Pocket Supp.). Importantly, in the pre-1985 version of what is now Section 7-36-30, there was provided only one special method of valuation for property classified as "part of a telephone or telegraph communications system": the one that considers "[p]lant," "[c]onstruction work in progress[,]" and "materials and supplies" property in determining value, i.e., present-day Section 7-36-30(D). *See* § 72-29-19(A), (C)-(E).

**{21}** In 1985, however, the Legislature amended the Code in three critical ways. First, it specifically removed references to "telephone or telegraph," replacing the prior classification with a new one: "communications system." *See* 1985 N.M. Laws, ch. 109, §§ 2(B), 6. Second, it enacted the definition of "communications system" previously discussed and subjected to central assessment all property used as part of a "communications system as that term is defined in Section 7-36-30[.]" 1985 N.M. Laws, ch. 109, § 2(B). Importantly, the new classification and definition retained no reference to "telephone" or "telegraph" systems to qualify the term "communications system." *See id.* Third, it provided an "alternative to valuation" under the preexisting method that allowed the taxpayer to elect to have its property valued "using one or more or a combination of" three methods: "(1) capitalization of earnings; (2) market value of stock and debt; or (3) cost less depreciation and

10

obsolescence[,]" 1985 N.M. Laws, ch. 109, § 6(G), (H),[2] i.e., the option provided by present-day Section 7-36-30(F) that contains no reference to "plant" property. We note that our Legislature was not the only one to so amend its property tax code in response to technological innovations in information transmission that occurred in the latter part of the twentieth century. *See Cable One, Inc. v. Ariz. Dep't of Revenue*, 304 P.3d 1098, 1103-04 (Ariz. Ct. App. 2013) (explaining that the Arizona legislature enacted its "telecommunications company definition" in 1985 at a time when "the telecommunications industry was undergoing profound changes concerning local and long-distance telephone services and who could provide those service[s]"); *see also Comcast Corp.*, 337 P.3d at 774-75, 787-89 (explaining that until 1973, Oregon centrally assessed only " 'telegraph communication' and 'telephone communication' " businesses but that in 1973 the Oregon legislature "replaced the references to telegraph and telephone communication with the more general term 'communication' " and describing the three major "evolutionary period[s] for cable television" between 1950 and the mid-1990s). Notably, our own Supreme Court, also in 1985, expressed an "aware[ness] that the telecommunications field is rapidly developing" when it held that cable companies providing the then-new service of "digital high speed data transmission" on an intrastate basis were subject to regulation by the State Corporation Commission. *In re Generic Investigation into Cable Television Servs. in State of N.M.*, 1985-NMSC-087, ¶¶ 3, 4, 27, 103 N.M. 345, 707 P.2d 1155.

**{22}**    This history also reveals the Legislature's intent to broaden the understanding of what types of communications-related property would be subject to central assessment and Section 7-36-30's special valuation methods. It also reveals an awareness by the Legislature that after so broadening the scope of Section 7-36-30, it became necessary to provide another method of valuation—one that does not approach valuation by considering the tangible property cost of a "plant." Thus, it is true that prior to 1985, only property that was part of a traditional telephone or telegraph system fell under the Department's authority. Section 72-29-2. However, after 1985, *any* property that is part of a "system for the transmission and reception of information by the use of electronic, magnetic or optical means or any combination thereof and which system or any portion thereof and is available for use by another person for consideration" is subject to classification as "communications system." Sections 7-36-2(B)(2), -30(B)(1). Perhaps most significantly, that a company arguably does not possess any property meeting Section 7-36-30(B)(4)'s definition of "plant" for valuation purposes in no way disqualifies it from having its property classified as "communications system."

---

[2] The 1985 amendment allowed election of either of the two prescribed valuation methods for only the 1986 and 1987 property tax years. *See* 1985 N.M. Laws, ch. 109, § 6(G). A 1987 amendment extended the ability to elect a valuation method through the 1989 property tax year. *See* 1987 N.M. Laws, ch. 206, § 1. In 1989, the Legislature amended Section 7-36-30 to its current form, which continues to allow the taxpayer to select between the two valuation methods provided in Sections 7-36-30(D) and (F). *See* 1989 N.M. Laws, ch. 112, § 1; § 7-36-30(C).

**{23}** Cable One fails to offer any explanation that would reconcile the Legislature's 1985 amendment of Sections 7-36-2 and 7-36-30 with its claim that "central assessment . . . is intended to apply only to . . . traditional, regulated telecommunications companies[.]" If the Legislature had intended to limit the Department's authority to centrally assess only "traditional" telecommunications companies that use the USOA as Cable One contends, it would have made little sense to amend the Code in 1985 as it did. We cannot ignore the Legislature's express removal and replacement of "telephone" and "telegraph" and assume the 1985 amendments do not evince legislative intent to change the then-existing law and broaden the scope of the Department's central assessment authority. *See State v. Adam M.*, 1998-NMCA-014, ¶¶ 19-20, 124 N.M. 505, 953 P.2d 40 (rejecting a request to read into a statute language that the Legislature had deleted); *In re Estate of Greig*, 1988-NMCA-037, ¶ 12, 107 N.M. 227, 755 P.2d 71 (explaining that "[w]hen the [L]egislature enacts a new law or amends an existing one, it does so for the express purpose of changing the law as it previously existed"). In light of this legislative history and the clear, unambiguous definition of "communications system," we conclude that the Legislature intended to grant the Department the authority to classify Cable One's property as "communications system" and assess it under Section 7-36-30 when Cable One elected to repurpose portions of its system in order to provide two-way communications services (i.e., internet and VoIP) to its customers.[3]

## II.  Cable One's Other Arguments

**{24}** Cable One makes a number of other arguments regarding why its property should not be subject to central assessment by the Department. We briefly address each one.

### A.  The Failure of H.B. 617 During the 2008 Legislative Session

**{25}** Cable One argues that absent action by the Legislature to amend the Code, the Department is bound by its previous interpretation that Cable One is not subject to central assessment and must leave valuation of its property to county assessors. Cable One points to a failed attempt by the Legislature in 2008 to amend Section 7-36-30's definition of "communications system" as evidence that the Legislature did not intend for its property to be centrally assessed under the then-existing—and still-existing—definition of

---

[3]While in no way necessary to our holding, we observe its consistence with those of other state appellate courts that have considered similar challenges brought by Cable One. *See Kay-Decker v. Iowa State Bd. of Tax Review*, 857 N.W.2d 216, 217 (Iowa 2014) (holding that Cable One's provision of VoIP service allowed it to be subjected to central assessment as a "telephone company operating a line in this state" under Iowa Code §§ 433.1 (2003), 433.12 (2008)); *Cable One, Inc.*, 304 P.3d at 1109 (holding that "Cable One is a telecommunications company under [Ariz. Rev. Stat. Ann.] § 42-14401 [(1999)] and therefore subject to central assessment by the [Arizona] Department [of Revenue]").

12

"communications system." Given our foregoing analysis of and conclusion regarding Section 7-36-30, we find it unnecessary to address arguments related to what intent may be gleaned from the Legislature's failure to amend the definition of "communications system" in 2008, other than to caution parties and district courts against jumping to and relying on legislative inaction as somehow providing evidence of legislative intent. *See Wegner v. Hair Prods. of Texas*, 2005-NMCA-043, ¶ 7, 137 N.M. 328, 110 P.3d 544 ("Legislative silence is not a reliable indicator of intent."); *see also Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶¶ 29-33, 125 N.M. 401, 962 P.2d 1236 (refusing to consider evidence of "legislative history" and construe "the language of statutory provisions that were never enacted" because such evidence "tells us nothing dispositive about the Legislature's intentions" and instead reaffirming that courts are to "determine legislative intent primarily from" the language of the statute itself).

## B. Overreach by the Department

**{26}** Cable One also argues that the Department never "attempt[ed] to clarify or broaden the . . . Code through a regulation or ruling" and that the Department's sua sponte decision in 2008 to begin centrally assessing Cable One and similar companies was an unlawful assertion of authority. Again, for the reasons previously discussed, we conclude that the Department was not required to "clarify or broaden" the interpretation of what property was subject to central assessment under Sections 7-36-2(B)(2) and 7-36-30 in order to assess Cable One because the Legislature had already provided the Department with such authority.

## C. Whether the Department Was Required to Leave Assessment of Cable One's Property to County Assessors and Allow County Assessors to Value Cable One's Property in Accordance with Section 7-36-2(F)

**{27}** Finally, Cable One argues that the Department does not have sole authority to value "communications system" property and contends that Section 7-36-2(F) provides county assessors with the ability to "value property belonging to companies subject to central assessment." Section 7-36-2(F) provides

> The [D]epartment is authorized to enter into one or more agreements with each county assessor . . . under which the county assessor agrees to perform the valuation of property for which the [D]epartment is responsible under Subsection B of this section but which property is not subject to the special methods of valuation set forth in Sections 7-36-27, 7-36-28[,] and 7-36-30 through 7-36-32.

According to Cable One, this subsection indicates that the Legislature (1) "contemplated that some property of 'communications systems' would not be susceptible to valuation under either of [Section 7-36-30's] special methods," and (2) "chose not to vest [the Department] with plenary power to use any other method to value such property." Cable One misconstrues Section 7-36-2.

13

**{28}**     Subsection F *permits*—but does not require—the Department to enter into agreements with county assessors to have county assessors perform valuations *if and only if* it is for property listed Section 7-36-2(B) that "is not subject to the special methods of valuation set forth in Sections 7-36-27, 7-36-28[,] and 7-36-30 through 7-36-32." The only type of property listed in Section 7-36-2(B) that is not subject to a special valuation method in the enumerated sections is "public utility" property. All other types of property—railroad, communications system, pipeline, and airline—have prescribed special methods of valuation. *See* Section 7-36-27 (providing a special method of valuation for oil, natural gas, carbon dioxide, and liquid hydrocarbons pipelines); § 7-36-28 (providing a special method of valuation for water pipelines); § 7-36-30 (providing a special method of valuation for "communications system" property); § 7-36-31 (providing a special method of valuation for railroads); § 7-36-32 (providing a special method of valuation for commercial aircraft). Cable One's claim that Section 7-36-2(F) allows county assessors to value "communications system" property under a valuation method other than those provided in Section 7-36-30 is incorrect.

**CONCLUSION**

**{29}**     For the foregoing reasons, we reverse the district court's grant of summary judgment in favor of Cable One and remand for entry of judgment in light of this opinion.

**{30}     IT IS SO ORDERED.**

 

 

_____
      **J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**M. MONICA ZAMORA, Judge**

14