This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**DOUGLAS COE,**

      Worker-Appellant,

v.                                                                          **No. A-1-CA-36457**

**PUEBLO OF SANDIA and FOOD
INDUSTRY SELF INSURERS FUND
OF NEW MEXICO,**

      Employer/Insurer-Appellees.

**APPEAL FROM WORKERS' COMPENSATION ADMINISTRATION
Reg C. Woodard, Workers' Compensation Judge**

Dunn Law Offices
Rod Dunn
Rio Rancho, NM

for Appellant

Maestas & Suggett, P.C.
Paul Maestas
Albuquerque, NM

for Appellees

### MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}**    Worker Douglas Coe appeals from the May 11, 2017, Workers' Compensation Judge's (WCJ) Workers' Compensation Order (order) awarding Worker temporary total disability (TTD) benefits from July 9, 2015, through January 1, 2016, following an accident he suffered during the course and scope of his employment. Worker contends that the WCJ's order—specifically the WCJ's conclusion of law stating that Worker is not entitled to TTD benefits after he voluntarily resigned for personal reasons unrelated

to his job duties on January 2, 2016—should be reversed and remanded. We disagree and affirm.

**BACKGROUND**

**{2}** On July 9, 2015, Worker, an employee of Pueblo of Sandia, was injured in a work-related accident when the shuttle bus he was driving was struck from behind by a motor vehicle. Worker claimed injuries to his back, neck, arms, and hips as a result of the motor vehicle accident. About a week later, Worker was released to return to light duty work with restrictions that he neither lift over ten pounds nor drive a company vehicle. Employer initially assigned Worker to light duty for three to four months working fewer than eight hours a day hanging keys at the valet. On September 2, 2015, approximately three to four months after Worker returned to work, Worker's medical care provider, Dr. Terry Hansen, released him back to driving the shuttle and increased Worker's lifting capacity. Worker drove the shuttle for approximately three months, after which he resigned on January 2, 2016.  The WCJ determined that Worker resigned his employment with Employer for personal reasons unrelated to his job duties.

**{3}** On March 28, 2016, Worker filed a complaint with the Workers' Compensation Administration (WCA) seeking a determination of TTD benefits, a determination of permanent partial disability benefits (PPD), and medical care for his work-related injuries, which Worker alleged had been denied. At the trial held on April 17, 2017, Worker testified that he stopped working for Employer on January 2, 2016, because he wanted to move to California to pray and also because he was injured and Employer was withholding medical treatment. Ultimately, Worker did not move to California after resigning from his position with Employer and had not worked from the time of his resignation to the time of trial. Worker was permitted to reapply for his position with Employer ninety days after his resignation, but he declined to do so.

**{4}** In the order, the WCJ found that Employer accommodated Worker's medical restrictions following the July 9, 2015 accident until Worker resigned on January 1, 2016.[1] The WCJ also found that Worker had not reached Maximum Medical Improvement (MMI) for his work-related injuries and therefore no permanent impairment rating or permanent work/medical restrictions were applicable. The WCJ concluded that Worker was entitled to medical care for the injuries resulting from the July 9, 2015 job-related accident. The WCJ further concluded that Worker was entitled to TTD benefits from the date of the injury, July 9, 2015, through the date of Worker's voluntary resignation and voluntary removal from the workforce on January 1, 2016, as defined by NMSA 1978, Section 52-1-25.1 (2005, amended 2017).

**DISCUSSION**

---

1 Worker testified at trial that he resigned on January 2, 2016, and Defendant's Exhibit S, Pueblo of Sandia Department of Human Resources Termination Form, presented at trial, lists Worker's date of separation from Employer as January 2, 2016. As such, we consider January 2, 2016, the correct date of Worker's resignation.

**{5}** The only issue on appeal is Worker's request to reverse the WCJ's conclusion of law that Worker is only entitled to TTD benefits from the date of injury, July 9, 2015, through the date of Worker's voluntary resignation and voluntary removal from the workforce on January 1, 2016, and not for any time after Worker voluntarily left the workforce.

**Standard of Review**

**{6}** Generally, "[w]e review workers' compensation orders using the whole record standard of review." *Leonard v. Payday Prof'l*, 2007-NMCA-128, ¶ 10, 142 N.M. 605, 168 P.3d 177. Since we are being asked to interpret and apply a statutory provision, our review is de novo. *See Wegner v. Hair Products of Texas*, 2005-NMCA-043, ¶ 7, 137 N.M. 328, 110 P.3d 544 (interpreting a statute is a question of law, which requires de novo review).

**Historical Version of Section 52-1-25.1 in Effect at Time of Worker's Injury Is Applicable**

**{7}** In interpreting Section 52-1-25.1 (2005), we look to the law as it existed in 2015 at the time of the subject accident. *See Wegner*, 2005-NMCA-043, ¶¶ 8, 17 (stating that any revisions or amendments to the Workers' Compensation Act (the Act) only apply to causes of action that accrue after the effective date of the amendment or revision unless there is express statutory language stating otherwise, and also recognizing that a cause of action accrues on the date of injury).

**{8}** "[TTD] means the inability of a worker, by reason of accidental injury arising out of and in the course of the worker's employment, to perform the duties of that employment prior to the date of the worker's [MMI]." Section 52-1-25.1(A) (2005). If, before a worker reaches MMI, "an injured worker's health care provider releases the worker to return to work, the worker is not entitled to [TTD] benefits if . . . (1) the employer offers work at the worker's preinjury wage." Section 52-1-25.1(B)(1) (2005). [2]

**Worker Is Not Entitled to TTD Benefits Beyond His Date of Resignation**

**{9}** The WCJ's order concluded that Worker was entitled to TTD benefits from the date of the injury through the date of Worker's "voluntary resignation and voluntary removal from the workforce" on January 1, 2016. Worker argues that he is entitled to TTD benefits after he voluntarily left his position with Employer because (1) Employer did not pay Worker his pre-injury wages following his work-related accident; and (2) if Worker had been fired, he would have received TTD benefits after he stopped working for Employer pursuant to our decision in *Lackey v. Darrell Julian Construction*, 1998-

---

[2] Although inapplicable to this appeal, in June 2017, the Legislature amended Section 52-1-25.1 and the following language was added: "A worker is not entitled to [TTD] benefits as set forth in Subsection B or C of this section if: (1) the employer makes a reasonable work offer at or above the worker's pre-injury wage, within medical restrictions, if any, as stated by the health care provider pursuant to[NMSA 1978, Section 52-1-49 (1990)], and the worker rejects the offered employment[.]" Section 52-1-25.1(D)(1) (2017).

NMCA-121, 125 N.M. 592, 964 P.2d 153, and it would be nonsensical if a worker who is fired for cause could receive TTD benefits whereas a worker who quits voluntarily could not receive those same benefits.

**{10}**  Employer answers Worker is not entitled to TTD benefits because Worker's wages increased after he returned to work until Worker was paid a wage equal to or greater than his pre-injury wage during the last two-week pay period before Worker voluntarily resigned his employment. As well, Employer argues that *Lackey* is inapplicable on several bases. We agree.

**{11}**  Under the version of section 52-1-25.1 (2005) in effect at the time, Worker is not entitled to TTD benefits because before Worker voluntarily left his job: (1) Employer offered to and compensated Worker in an amount above his pre-injury wage; and (2) Worker was released to perform the work offered by Employer—returning to his previous responsibility as a shuttle driver—by his health care provider. Regarding the first point, when Worker resigned from his job, he was driving the shuttle forty hours a week as permitted by the release provided by his medical care provider. The WCJ found, and Worker conceded on appeal, that "Employer accommodated Worker's return to work restrictions following the accident." *See Kruskal v. Moss*, 1998-NMCA-073, ¶ 17, 125 N.M. 262, 960 P.2d 350 (stating that findings not attacked by appellant are binding on appeal).

**{12}**  Second, a close review of the record indicates that immediately before Worker voluntarily left his position with Employer, Worker was being paid a better wage than he was being paid before the accident. In fact, Worker even admitted in his Requested Findings of Fact and Conclusions of Law, filed with the WCA on April 21, 2017, that "Worker is not entitled to any temporary partial disability benefits for the two week payroll period ending 12/26/15." Payroll documents in the record proper show Worker's average weekly wage pre-injury was $628.92. Worker earned an average weekly wage of $629.31 during the two week payroll period ending 12/26/2015, immediately before Worker quit his job. The record therefore demonstrates that Worker was making a wage that was the same as or higher than his pre-injury wage at the time of his departure.

**{13}**  In his reply brief, Worker argues that he in fact did not earn pre-injury wages in the two-week period prior to his resignation because the WCJ awarded TTD benefits through that two week period until the day Worker resigned on January 2, 2016. We are not persuaded. The language used by the WCJ specifically states that Worker is entitled to TTD benefits from the date of the accident through the date Worker resigned, "as defined by § 52-1-25.1." Section 52-1-25.1(C) (2005) states if an employer "offers work at less than the worker's pre-injury wage," the worker is considered disabled and shall receive TTD benefits "equal to two-thirds of the difference between the worker's pre-injury wage and the worker's post-injury wage." Worker's wage in the two weeks before his voluntary resignation was higher than his pre-injury wage. According to the equation set forth in the statute, Worker would not have received any TTD benefits during his last two weeks of employment.

**{14}** As to Worker's legal argument that he is entitled to TTD benefits beyond his resignation date, we first state that his argument in this regard is inadequately developed. Issues unsupported by cited authority will not be reviewed on appeal. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority. We therefore will not do this research for counsel. Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal." (citations omitted)). Furthermore, issues not adequately argued in a brief will not be reviewed, i.e., this Court will not develop a party's arguments for it. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that where "[t]here is no explanation of [the appellant's] argument, nor are there any facts that would allow us to evaluate this claim[,] [w]e will not review unclear arguments, or guess at what [the appellant's] arguments might be"). Worker's conclusory statement interpreting and challenging the WCJ's conclusion of law in this regard lacks sufficient support and this Court will not develop Worker's argument for him.

**{15}** For our purposes on appeal, the record plainly reflects that following a few months of light duty work, Worker was released to again drive the shuttle with minimal lifting restrictions and was offered work by Employer at a compensation rate in excess of his pre-injury wage during the pay period in the last two weeks before his resignation. Regardless of the argument Worker fails to develop, under Section 52-1-25.1 (2005), Worker is not entitled to TTD benefits past his resignation date.

### *Lackey* Is Not Analogous, and Therefore, Not Authoritative Law in This Case

**{16}** In Worker's briefing, he cites to *Lackey*, representing that "[t]he only difference between this case and the *Lackey* case is that Worker resigned for personal reasons, instead of being fired for cause by Employer." In *Lackey,* worker suffered two work-related accidents and returned to work under light duty restrictions. 1998-NMCA-121, ¶ 2. Upon his return to work, the worker in *Lackey* was paid less than his pre-injury wage. *Id.* ¶ 6. After several months working under light duty, worker was fired for drinking a beer on his lunchbreak in violation of the employer's rules, and as a result, the employer discontinued the worker's TTD benefits. *Id.* ¶ 2. Employer appealed an order from the WCA awarding Worker TTD benefits for a period of time after he was fired. *Id.* ¶ 1. This Court affirmed the WCJ's order and held that worker was entitled to TTD benefits "despite his firing *as long as he is not released to work by his physician*[.]" *Id.* ¶ 1(emphasis added). This Court reasoned that the award of TTD benefits after Worker was fired were proper because, "[i]f [the e]mployer wanted to totally avoid liability for disability benefits in the event [the w]orker was fired, it should have rehired him at his pre-injury wage." *Id.* ¶ 20.

**{17}** Importantly, Worker concedes on appeal that he voluntarily resigned from his position with Employer "for personal reasons unrelated to his job duties." Worker's reasons for resigning from his position were debated at trial and the WCJ concluded them to be personal. Regardless, because Worker did not specifically argue on appeal

that he left for any reason other than the personal reasons listed by the WCJ, we are bound by the WCJ's finding on appeal. *See Kruskal*, 1998-NMCA-073, ¶ 17.

**{18}** For several reasons, Worker's reliance on *Lackey* is misplaced. First, *Lackey* is not factually analogous and is not controlling here. Contrary to Worker's argument, Worker's situation is substantially different than the situation of the worker in *Lackey.* Worker *voluntarily left* his position with Employer for personal reasons. The worker in *Lackey* was fired for cause by his employer. 1998-NMCA-121, ¶ 6. Most importantly, the worker in *Lackey* was not making pre-injury level wages when he was fired, whereas Worker here was making more than his pre-injury wages at the time of his resignation. *Id.* ¶ 20. Rather, Employer provided Worker with his original job driving the shuttle and payed him more than his pre-injury wage, and Worker nonetheless voluntarily left the job for personal reasons. Further, the most recent amendment to Section 52-1-25.1 (2017) became effective June 16, 2017, approximately a month after the WCJ's order was entered on May 11, 2017, and includes language disallowing TTD benefits if a worker is terminated from his or her position for misconduct connected to worker's employment but unrelated to worker's workplace injury. *See* § 52-1-25.1(D)(3) (2017). While this amendment is neither applicable to Worker's injury nor bears upon the circumstances of Worker's injury, return to work, and resignation, the statutory amendment effectively no longer allows for the post-termination-for-cause relief provided in *Lackey.* For that reason, we do not find Worker's arguments analogizing his situation to the worker's situation in *Lackey* persuasive. As such, the reasoning and holding in *Lackey* do not apply here. The WCJ's conclusion regarding Worker's TTD benefits, on the whole, is adequately supported, and therefore warrants affirmance.

**Awarding Worker TTD Benefits After His Voluntary Resignation Would Frustrate the Legislative Goals of the Act**

**{19}** One of the legislative goals of the Act is to "promote the rehiring of injured workers and thereby reduce their reliance on compensation benefits." *Gurule v. Dicaperl Minerals Corp.*, 2006-NMCA-054, ¶ 7, 139 N.M. 521, 134 P.3d 808. Additionally, the "Act provides statutory incentives to both employers and employees to encourage return to work with minimal dependence on compensation rewards." *Gurule*, 2006-NMCA-056, ¶ 7. Employer provided Worker with a first position in accordance with his required accommodations, and then upon Worker's release he had returned to his former duties at a rate higher than Worker's pre-injury wage. To require more of Employer— particularly given Worker's voluntary separation from employment for personal reasons—would frustrate the legislative goals encouraging employees to work with minimal dependence on compensation awards.

**CONCLUSION**

**{20}** Thus, we conclude that Worker is not entitled to TTD benefits beyond his resignation on January 2, 2016.

**{21}** For the foregoing reasons, we affirm.

**{22}** IT IS SO ORDERED.

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**RICHARD C. BOSSON, Judge Pro Tempore**